HILLS, APPELLANT, v. MUTUAL OIL CO., RESPONDENT.

(No. 4,960.)

(Submitted November 22, 1922.   Decided December 18, 1922.)

[211 Pac. 314.]

*Corporations—Stockholders—Subscription to New Stock Issue—
Tender of Purchase Price—When Unnecessary—Conditional
Acceptance of Offer—Effect.*

Tender—When Unnecessary.
   1.   Where a tender is required by any obligation, and it is apparent
that it will be refused if made, it need not be made, the party in
such a case being required to do no more than hold himself ready,
able and willing to perform.
Corporations—Issue of Stock—Purchase Price—Tender—When Unneces-
sary.
   2.   Where the right of a stockholder to a certain number of shares
of stock in a corporation was in litigation between him and it and
he received notice from the company that its stockholders had the
right to subscribe for their *pro rata* of a new stock issue provided
payment for the new stock was made within a given number of days
and he did subscribe, he was not required, in his action to compel
delivery of the stock, to show that he had tendered the amount of
purchase price, it being apparent that it would have been refused if
made, but was required to hold himself ready to perform.
Same—Offer of New Stock Issue—Conditional Acceptance—Effect.
   3.   Where a stockholder in subscribing for his *pro rata* share of
a new stock issue, instead of forwarding the purchase price to the
office of the company as required by the resolution of the corpora-
tion authorizing it, notified it that the stock should be forwarded to
a given bank whereupon the amount due would be paid on delivery
of the stock, his action amounted to a conditional acceptance of
the offer and the company was under no obligation to issue to him
the shares he would otherwise have been entitled to.

*Appeal from District Court, Cascade County; J. B. Leslie,
Judge.*

ACTION by H. G. Hills, against the Mutual Oil Company.
Judgment for defendant, and plaintiff appeals.   Affirmed.

*Messrs. Freeman & Thelen* and *Messrs. Norris, Hurd &
Rhoades,* for Appellant, submitted a brief; *Mr. Edwin L.
Norris* argued the cause orally.

*Mr. I. W. Church* and *Mr. Fletcher Maddox,* for Respondent,
submitted a brief; *Mr. Maddox* argued the cause orally.

MR. COMMISSIONER BORTON prepared the opinion for the court.

On December 18, 1909, plaintiff below (appellant herein) and the defendant entered into an agreement which had as its object the purchase by the plaintiff of the defendant of thirty shares of stock in the defendant corporation, payment for the said thirty shares to be made out of dividends and net earnings of the Great Falls district; the plaintiff having some official connection with the Great Falls district of the defendant company.

On March 10, 1914, the defendant, by appropriate action, increased the capital stock of the company $50,000, and adopted the following resolution: "All stockholders of the Mutual Oil Company shall exercise the right to subscribe for their *pro rata* to the new issue of five hundred shares common stock and pay cash for same within ten days from date of meeting, March 10, 1914, after which time the officers shall have the right to dispose of said stock to other stockholders or parties."

On March 10, 1914, the plaintiff was the owner of three shares of the common stock of said defendant, about which there was no question. It appears that no notice of the action of the defendant company on March 10, 1914, reached the plaintiff until the annual meeting of the company on April 6, 1914, at which time the plaintiff was present and voted upon the adoption of the minutes of the meeting of March 10, 1914. On April 11, 1914, the plaintiff wrote the defendant the following letter:

"Gt. Falls, Mont., April 11, 1914.

"Stock Certificates No. 121, 122 & 174.

"Mutual Oil Co., Kansas City, Mo.

"Gentlemen: As per your request I am enclosing stock certificates herewith to be exchanged for new certificates showing the capital stock of the Mutual Oil Co., to be $300,000.

"I am also enclosing herewith my check for $100.00 for which please send me the shares of common stock to which I am entitled under the plan of enlargement of capital stock;

this share of stock being the *pro rata* for the enclosed three certificates.

"In regard to the stock to which I am entitled, for the 30 shares under which a settlement is to be had later, I will want 10 shares more of the common stock. These 10 shares I will be prepared to take at any time if you will kindly advise me when you are ready to deliver them.

"Very truly yours,

"H. G. HILLS."

There was no reply by the defendant company to that portion of the letter referring to the thirty shares of stock, nor to the plaintiff's request for ten shares more of the common stock.

There can be no doubt that for some time previous to March 17, 1917, there had been a controversy between the plaintiff and defendant over the agreement between the plaintiff and defendant for the purchase and sale of the said thirty shares of stock, for on that date, to-wit, March 17, 1917, there was a judgment entered in the United States district court, adjudging and decreeing the plaintiff to be entitled to the possession and delivery of said thirty shares of stock, upon condition that the balance of the purchase price then due and unpaid should be paid. It is also apparent that the litigation did not end at this time, for on March 26, 1918, plaintiff's attorneys wrote the defendant that the United States circuit court of appeals for the ninth circuit had affirmed the judgment of the lower court.

This case, here on appeal, was tried to the court without a jury, and submitted upon an agreed statement of facts, including all facts admitted by the pleadings. Upon this agreed statement of facts the court made conclusions of law, among them one to the effect that the plaintiff had lost his right to purchase the ten additional shares for which he contended. The plaintiff prosecutes this appeal from the judgment of the court.

The resolution for the issuance of the stock exacts payment of the stockholder desiring the additional stock within ten days after March 10, 1914. It is conceded that the plaintiff herein

received no notice of the said resolution until April 6, 1914. It is likewise shown that upon April 11, 1914, the plaintiff wrote the letter quoted above. It is to be noted in that letter that the plaintiff made no remittance upon his request for the additional ten shares of stock, although he did send his check for $100 to purchase the additional stock to which he had a right by reason of his ownership of the three shares of stock not involved in any controversy. Defendant contended very vigorously upon its oral argument, and likewise in its brief, that the plaintiff was obligated to remit $1,000, the plaintiff on the other hand contending, both in his brief and in his oral argument, that to remit the $1,000 was an idle act, for the reason that the defendant company would not receive it, since the thirty shares were involved in controversy. It is to be noted that there is no communication from the defendant to the plaintiff relative to the payment of the $1,000. There can be no doubt that the place of payment was Kansas City. The plaintiff recognized that, because he remitted $100 by reason of the resolution, *supra,* to obtain one share of stock for the three that he had, about which there was no controversy.

It is likewise true, and the settled law of this state, that [1, 2] where a tender is required by any obligation, and it is apparent that that tender will be refused, such tender is not necessary. All that is required in such a situation is that the party making the tender should hold himself ready, willing and able to perform. (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918.) It becomes important, therefore, to determine whether or not the plaintiff was within the principle of law requiring him to hold himself ready, willing and able, rather than to make a tender. The amended answer of the defendant company disposes of any doubt as to the attitude of the company relative to the right of the plaintiff to purchase the ten additional shares. In the very first paragraph of the amended answer it is set up that: "Plaintiff was not to become, and did not become, the owner of said thirty shares of stock or become entitled to the transfer, issue, or possession of any certificate

therefor until said note, or any renewals thereof, should have been paid." And in paragraph 2: "Did on said date remit to the defendant company the sum of $100 in payment thereof, and did thereafter receive and become the holder of record of one share of said increased capital stock, which was all of said increased capital stock which he was then entitled to purchase." And, further, in paragraph 4: "The plaintiff's said notice of election to take ten shares of said increased capital stock and offer to pay $1,000 therefor, as alleged in paragraph five of the complaint, was disregarded by the defendant company, and the ten shares to which the plaintiff would have been entitled had he been the owner of the said thirty shares were sold and disposed of by the officers of the defendant company to other stockholders prior to the year 1917." And in paragraph 5: "That the notice or offer created no obligation or duty on the part of the defendant company to recognize or respond to the same." And in defendant's second and separate defense, in dealing with the same offer, it is alleged that: "Said letter, so far as it was understood to refer to the desire of the plaintiff to acquire ten shares of said increased capital stock, was disregarded by the defendant." While some of these quotations might be open to the interpretation that the defendant was taking this attitude by reason of the failure of the plaintiff to remit the $1,000, nevertheless, taken as a whole, they disclose such an attitude that a reasonable man would be justified in concluding that the tender of payment would have been refused.

We conclude from these facts that, even though the plaintiff had remitted $1,000 with his letter for the ten additional shares of stock, the same would have been refused and disregarded by the defendant company, and that therefore all that the plaintiff was required to do was to hold himself ready, willing and able to pay, and that he did so is stipulated as a fact.

But this situation is changed when the litigation relative to [3] the thirty shares of stock had been terminated by decision of the circuit court of appeals of the ninth district. The question of who was the owner of the thirty shares of stock

was determined, and the defendant issued the certificate therefor to the plaintiff. This being so, it became the duty of the plaintiff to deal with the defendant, in relation to the ten shares, as he had theretofore with reference to the one share. But, instead of falling within the lines of the resolution *supra,* he proposed that the certificate for the ten shares, together with checks for dividends, should be sent to any bank in Great Falls, and that when the plaintiff or his attorney paid the $1,000, the bank should deliver said stock and dividend checks to the plaintiff. This amounted in substance and in fact to a conditional acceptance of the offer made in the resolution *supra,* and, being such, under the elementary principle of contracts, when not accepted, created no obligation upon the defendant company. It follows, therefore, that the defendant company was under no obligation to issue the ten additional shares to the plaintiff herein.

The judgment is assailed in other particulars, but a decision of those points is not necessary in reaching a conclusion in this matter, and we do not pass upon them.

We recommend that the judgment of the lower court be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion the judgment is affirmed.

*Affirmed.*