**MITCHELL, Adm'r, et al. v. REEDER et al.**

No. 13651—Opinion Filed June 10, 1924.

Rehearing Denied Nov. 12, 1924.

**1. Tender—Waiver.**

When a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it is reasonably certain that the offer if made would have been refused.

**2. Trusts—Purchase of Trust Property by Trustee—Invalidity.**

As a general rule, if the trustee becomes the purchaser of trust property, such purchase is voidable at the instance of the cestui que trust, and this rule applies notwithstanding the trustee purchase at a public sale. And this general rule also applies whether the trustee purchase directly or merely furnishes the funds to another for such purchase.

**3. Same—Judgment Sustained.**

Record examined, and held, that the judgment of the trial court divesting the title to the property in controversy out of the purchaser at the sale and revesting the same in the plaintiffs, subject, however, to a lien for any sum of money found to be due the defendants in an accounting suit to be later had, is amply supported by the evidence.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by C. L. Reeder and Jessica V. Reeder against Young O. Mitchell, as administrator of the estate of John O. Mitchell, deceased, and Young O. Mitchell and others to declare the defendant Young O. Mitchell the trustee for the benefit of the plaintiffs of the entire interest in certain real estate.

Judgment for plaintiffs, and defendants bring error. Affirmed.

Davidson & Williams and J. C. Stone, for plaintiffs in error.

Woodson E. Norvell, for defendants in error.

Opinion by PINKHAM, C. This is an appeal from a judgment of the district court of Tulsa county, canceling and setting aside a certain contract between the defendants in error and John O. Mitchell, dated June 1, 1912, with reference to certain real estate described in the said contract, and canceling a certain quitclaim deed of the same date conveying to John O. Mitchell an undivided one-half interest in said real property, and decreeing that Young O. Mitchell holds the title to said real property, which he acquired by a sheriff's deed of date of November 7, 1918, in a mortgage foreclosure suit in which said property was sold pursuant to orders of the court, in trust for the defendants in error, subject to a lien for any balance which may be found due Young O. Mitchell or any of the defendants upon an accounting hereafter to be had between the parties plaintiff and defendant, and that the title to the said real estate be divested out of the said Young O. Mitchell, and revested in the defendants in error, subject to a lien for any indebtedness, if any there is shown to be.

The plaintiffs in error will be referred to as defendants, and the defendants in error as plaintiffs.

On July 1 and before the case came on for trial, John O Mitchell died intestate and the cause was revived against Young O. Mitchell, as administrator of his estate, and Young O. Mitchell and others, pursuant to a stipulation filed in said cause on September 27, 1921.

On the last mentioned date the plaintiffs filed a third amended and supplemental petition, alleging, among other things, the death of John O. Mitchell, the appointment of Young O. Mitchell as his administrator, and that the other parties named were the heirs at law of John O. Mitchell, and that the cause had been revived by consent.

On November 12, 1921, Young O. Mitchell, as administrator of the estate of John O. Mitchell, deceased, filed his separate demurrer to said third amended petition on two grounds: (1) Because the plaintiff had improperly joined therein two alleged causes of action; and (2) that as to the first alleged cause of action the said amended peti-

tion did not state facts sufficient to constitute a cause of action against the said defendants. And on the same day the said Young O. Mitchell individually filed his separate demurrer to the said petition upon the same grounds.

The court sustained each of said demurrers on the ground of misjoinder of causes of action and ordered that the two alleged causes of action be docketed as separate and distinct causes of action. The court in the same order overruled each of said demurrers upon all other grounds to which Young O. Mitchell individually and as administrator of the estate of John O. Mitchell, deceased, duly excepted.

The said petition alleged, in substance, that the plaintiffs on and prior to June 1, 1912, owned the property in question upon which they had constructed a five-story concrete office building; that at the time the building had not been fully completed and plaintiffs had involved themselves in debts in a sum slightly in excess of $40,000, the largest item of which was a mortgage to one Gault for the benefit of the trustees of Barnes' Hospital, St. Louis, Mo., in the principal sum of $25,000; that the plaintiffs were financially embarrassed, being unable to complete said building or pay any part of the indebtedness against it or further delay the foreclosure of the liens against it: that with the property in this situation and the plaintiffs in these circumstances they entered into a contract with John O. Mitchell on the 1st day of June, 1912.

This contract, after setting out the items of indebtedness, aggregating, as before stated, something over $40,000, states that many of the described claims are due, and that the plaintiffs are desirous of paying off and discharging the same, and to secure the aid of the said John O. Mitchell to that end; and continues as follows:

"Now, therefore, in consideration of the premises and for the consideration herein below set out, the parties hereto contract and agree that the said first parties will, by quitclaim deed, convey to the said second party an undivided one-half interest in and to the real estate and premises above described. And that said second party agrees that, together with the said C. L. Reeder, he will execute such new notes, and mortgages, and other obligations, as may be requisite, necessary or desirable for securing extensions of time for payment of the above recited debts, or for raising the cash money with which to pay off and discharge such of said claims as can not be extended.

"It is further agreed between all the parties hereto that said second party shall have absolute and sole possession and control of the said real estate, and premises, with full and exclusive power to rent the same, to receive and receipt for all rents collected, and to expend all money so collected, in making such repairs and improvements, on said property, as shall be mutually agreed on between the said C. L. Reeder, and John O. Mitchell, in paying all expense incident to the operation and management of said property, and the due possession and enjoyment thereof, including the payment of taxes, insurance and other charges, and in paying off and discharging all of the above claims. But it is further agreed that the said second party shall not have, receive or retain any money or other consideration whatever, further than his said half interest in said property, for his individual service, aid, and assistance in carrying out, and performing the aforesaid objects and purposes of this agreement, and that, at any time after the total claims against said building shall have been reduced to the sum of $25,000, any money derived from the rents collected from said building and not needed to pay claims already matured shall, upon the mutual consent of the said C. L. Reeder and John O. Mitchell, be equally divided between them."

The theory of the said petition was that John O. Mitchell occupied a fiduciary or confidential relation to the plaintiffs with reference to the property in question on account of the contract of June 1, 1912, and that the said John O. Mitchell was disqualified to become the purchaser of said property at the foreclosure sale, and that on account of Young O. Mitchell being the son of John O. Mitchell, and having actual knowledge of the existence and terms of said contract, he was likewise disqualified to become a purchaser of the said property.

It was further alleged that John O. Mitchell had failed to carry out the terms of said contract: that he had failed to pay the paving and general taxes against the said property and had himself advised the foreclosure of the Barnes' Hospital mortgage of $25,000.

On December 3, 1921, the defendants filed their answer to the first alleged cause of action in which they denied all the allegations therein contained, except such as were therein specifically admitted.

They admitted the execution of the contract of June 1, 1912, and that John O. Mitchell took possession of the said property under said contract and operated and managed the same thereafter until the sale of the property to Young O. Mitchell at the

foreclosure sale; they admitted the death of John O. Mitchell and the appointment of Young O. Mitchell as his administrator, as alleged, and that the other defendants were the heirs at law of John O. Mitchell.

They then alleged the facts with reference to the foreclosure of Barnes' Hospital mortgage and the sale of the said property at foreclosure sale to Young O. Mitchell, the confirmation of said sale by the court, and the execution and delivery of a sheriff's deed to Young O. Mitchell, conveying to him the fee simple title to said property.

They further alleged that between the first day of August, 1919, and the first day of April, 1920, said Young O. Mitchell expended the sum of $61,990.20 in making permanent improvements on said premises, and they further alleged and pleaded that the issues raised by the plaintiffs in this suit were res judicata by reason of and on account of the proceedings in the foreclosure suit of the trustees of Barnes' Hospital; and also alleged and pleaded the acts and conduct of the plaintiffs set out in their answer as an estoppel against their claim of any right, title, or interest in or to said premises.

At the conclusion of plaintiffs' testimony in chief the defendants demurred to the evidence. The court overruled the demurrer and the defendants excepted thereto.

After the conclusion of all the testimony and argument of counsel the court made findings of fact and conclusions of law, and rendered judgment in favor of the plaintiffs, as stated.

Motion for new trial was filed and overruled, and exceptions taken.

The defendants excepted to said judgment and prayed an appeal to this court.

For reversal of the judgment defendants in their brief assign as error: (1) That the defendants' demurrer to the third amended petition ought to have been sustained on the grounds that said petition does not state facts sufficient to constitute a cause of action.

It is contended that the failure of plaintiffs to allege in their petition that they were able, ready, and willing to restore to the defendants the money expended by the defendants and to do equity in the premises makes their petition demurrable, and a number of cases are cited in support of the contention.

The rule announced in the cases referred to is undoubtedly the general rule applicable to the facts which those cases present.

In the instant case, however, after the defendants' demurrer had been overruled the defendants filed their answer in which they positively deny that the plaintiffs have any interest whatever in or to the property in question; the doctrine of estoppel and res judicata is invoked; and an affirmative judgment of several thousand of dollars is sought against the plaintiffs in a cross-petition.

It is therefore evident that if any tender had been made the same would have been refused.

"When a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it is reasonably certain that the offer if made would have been refused." Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468.

The defendants claiming in opposition to the trust it was not essential that a tender should have preceded the institution of the suit. Keller v. Amble, 58 Pa. St. 410.

Furthermore, in the judgment rendered, the court found that Young O. Mitchell bought at the sheriff's sale for the use and benefit of his father, John O. Mitchell, deceased, a sheriff's title, and charged the title thus obtained with a trust for the benefit of the plaintiffs, subject, however, to a lien for any sum of money found to be due any of the defendants upon an accounting to be had later.

Furthermore, the exact situation with respect to the rents and profits received by the defendants and expenditures made and debts paid on the property could not be known or intelligently approximated until such time as an accounting was had.

In view of these disclosures in the record we think the court did not err in overruling the defendants' demurrer to the amended petition.

It is further contended that the defendants' demurrer to the plaintiffs' evidence interposed at the close of the plaintiffs' evidence ought to have been sustained, and, further, that the judgment of the trial court is contrary to the law and the evidence, and its findings of fact and conclusions of law are erroneous.

These propositions may be considered together.

We are convinced from a careful examination of the pleadings and proof that the contract entered into June 12, 1912, between John O. Mitchell and the plaintiffs, was a

trust agreement. It was admitted by the pleadings that John O. Mitchell had no interest in the property in question prior to the date of that trust agreement; that he took possession of all the property involved by virtue of that contract and quitclaim deed to an undivided one-half interest in the property; that he remained in possession thereof and received the entire rents and profits therefrom until the sheriff's sale. An examination of the trust agreement shows that in consideration of the conveyance of the one-half interest John O. Mitchell was to be the active agency in saving the interest of the plaintiffs from foreclosure. The trust agreement was a confession on the part of the plaintiffs that their powers to borrow money had become exhausted They were willing to sacrifice one-half of their property, which was bringing, at the time, $800 a month rental, to avoid losing it all.

The consideration for the quitclaim deed was the performance of the conditions precedent expressed in the contract of June 1, 1912.

The party of the second part in that contract agreed to actively administer the trust estate and by his ability and financial standing to borrow money upon the joined credit of himself and the plaintiffs and save the property from a foreclosure sale.

If, after executing the contract, he found himself unable for any reason to carry out the terms of the trust imposed upon him it was his duty to restore to the plaintiffs the one-half interest in the property conveyed to him, and thus terminate the trust relation.

It is clear from a perusal of the evidence contained in the record that he permitted the taxes—paving and general—to become delinquent, and in 1912 purchased the tax sale certificate; that he advised the holder of the $25,000 mortgage to foreclose the same, and stated to him in a written communication that he desired to get rid of a disagreeable partner.

The evidence further shows that Young O. Mitchell had worked in his father's office as a bookkeeper at a salary of $150 a month; that he knew of the trust agreement; that he had no sufficient means of his own with which to purchase the property at the foreclosure sale; that after he bought the property at the sheriff's sale, the form of the debt was merely changed but for an increased amount; and that John O. Mitchell signed all the new evidence of the old debts; and after his death Young O. Mitchell mortgaged the property to the Muskogee bank to secure an outstanding debt originally contracted by John O. Mitchell individually.

We conclude, in view of the facts disclosed by the record, that John O. Mitchell, being the active trustee of an express trust, could not himself have purchased the property in controversy at a judicial sale which he had recommended and advised.

As a general rule, if the trustee becomes the purchasr of a trust property such purchase is voidable at the instance of the cestui que trust. The rule applies, notwithstanding the trustee purchase at a public sale. Marr v. Marr. 73 N. J. Eq. 643, 70 Atl. 375. And it follows, we think, in view of the facts disclosed by the record. that Young O Mitchell bought the property in question for the use and benefit of his father, and that the title thus obtained by him was properly charged with a trust for the benefit of the plaintiffs, subject however to a lien for whatever sum of money fairly and justly may be found to be due any of the defendants in the accounting suit. Garder v. Ogden, 22 N. Y. App. 332; Trice v. Comstock, 57 C. C. A. ——, 121 Fed, 620; Gilbert v. Hewetson, 79 Minn. 326, 82 N. W. 655, 79 Am. St. Rep. 486.

For the reason stated, we think the judgment of the trial court should be affirmed, with directions to proceed with the accounting between the parties.

By the Court: It is so ordered.