## KINGKADE et al. v. PLUMMER.

No. 13955—Opinion Filed May 26, 1925.

Rehearing Denied Sept. 8, 1925.

**1. Quieting Title—Party Entitled to Sue—Grantor Under Agreement to Clear Title.**

A grantor who has conveyed real property by warranty deed, with full covenants, under an agreement with his grantee that the purchase money shall not be paid until a cloud upon the plaintiff's title is removed, has sufficient interest in the subject-matter to maintain an action to remove a cloud and to quiet title.

**2. Libel and Slander—Action for Slander of Title—Sufficiency of Petition—Malice.**

A petition which alleges in substance that the defendants wrongfully caused to be recorded a deed of trust and mortgage known to be inoperative, and thereby slandered his title to his injury, is not subject to demurrer for the reason that it does not allege that the defendants were actuated by malice. An injurious publication is presumed to be malicious if no justifiable motive for making it is shown.

**3. Tender—Waiver Where Refusal Certain.**

Where a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it appears that such offer, if made, would have been refused.

**4. Libel and Slander—Slander of Title—Recording Mortgage and Refusing Loan.**

The plaintiff made an application to the defendant for a loan upon certain real estate. Afterward, at the request of the defendant, the plaintiff executed a mortgage and deed of trust upon said real estate, and delivered the same to the defendant. The defendant recorded said instruments and refused to make the loan contemplated. Held, that the recording of said instruments under the circumstances was wrongful and amounted to a slander of the plaintiff's title to the real estate covered thereby.

**5. Appeal and Error—Joint Assignment of Error—Effect.**

A joint assignment of error must be good as to all who join in it, or it will be good as to none.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Haskell County; E. F. Lester, Judge.

Action by W. A. Plummer against Andrew Kingkade and Oklahoma Farm Mortgage Company. From judgment for plaintiff, defendants appeal. Affirmed.

Burford, Miley, Hoffman & Burford, H. W. Harris, and M. G. Meister, for plaintiffs in error.

Malcolm E. Rosser, for defendant in error.

Opinion by DICKSON, C. The parties will be referred to in this opinion as plaintiff and defendants, as they were designated in the trial court.

The plaintiff alleged in his petition, in effect, that on the 22d day of August, 1917, he made an application to the defendant Oklahoma Farm Mortgage Company, through its agent, H. H. Calhoun, for a loan upon a tract of 337 acres of land in Haskell county; that at the time said application was made there was a suit pending in the district court of said county between J. F. Lawrence, plaintiff, and W. L. Stocker et al., defendants, which affected the title to 87 acres of said land, that the plaintiff informed said agent of the pendency of said suit and was advised by him that said suit would not prevent the making of said loan; that relying upon the promise that said loan would be made by the defendant Oklahoma Farm Mortgage Company, the plaintiff, on the 27th day of September, 1917, executed negotiable bonds in the aggregate sum of $11,800, and a deed of trust conveying said lands to the defendant Andrew Kingkade as trustee, as security for the payment of said loan, and executed promissory notes in the aggregate sum of $1,652 in favor of the defendant Oklahoma Farm Mortgage Company, and a second mortgage covering said lands to secure the payment thereof; that said instruments were delivered to said defendants through said agent, and on the 4th day of October, 1917, recorded in the office of the county clerk of said Haskell county, that said defendants have at all times refused to make said loan or any part thereof, and refused to release or cancel said instruments.

It is further alleged that the plaintiff purchased said land for the purpose of reselling the same, as the defendant well

knew; that said lands were of the value of $50 an acre, and that the plaintiff had a customer ready and willing to purchase said lands at that price, but lost the sale on account of the wrongful recording and refusal to release said deed of trust and mortgage; that the plaintiff afterwards sold said land to one Mamie B. LeFlore, at and for the price of $45 an acre, that being the best price obtainable, under a contract that the purchase price should not be paid until said deed of trust and mortgage were released or canceled. The plaintiff prayed for damages in the sum of $1,685, and the cancellation of said deed of trust and mortgage and the evidence of indebtedness secured thereby.

The defendants demurred to the petition upon the grounds that it did not state facts sufficient to constitute a cause of action against the defendants, and in favor of the plaintiff. The demurrer was overruled and an exception reserved. The defendants answered: (1) By a general denial. (2) Alleged that it was the custom of loan companies to record mortgages at the time loans were applied for. (3) Specifically denying the agency of H. H. Calhoun. (4) By way of cross-petition.

The defendants allege that on the 22nd day of August, 1917, the plaintiff made an application to the Oklahoma Farm Mortgage Company for a loan, whereby the plaintiff agreed to pay the fees of an abstracter, an attorney fee for examining and certifying to the title to the lands described in said application, together with the costs of recording said mortgages and other papers necessary to complete said title. That under the terms of said application the plaintiff had expended the sum of $57, and by a second count of said answer and cross-petition the defendants allege that the plaintiff agreed to furnish them a clear title to said real estate, and that said defendant Oklahoma Farm Mortgage Company procured a customer ready, willing, and able to make the loan upon said real estate, but that the plaintiff was unable to, or refused to furnish a clear title, and therefore said loan could not be made. They further allege that the notes for $1,652, and mortgage securing the payment thereof, represented the commission of said defendants for securing said loan. They therefore prayed judgment against the plaintiff, that the plaintiff be denied any relief, and for judgment for $57 provided for in said application, and for judgment in the further sum of $1,652, together with an attorney

fee of $165, and that said judgment be declared a lien upon the real estate.

On the trial, the uncontradicted evidence was that, on the 16th day of May, 1917, the plaintiff obtained an option to purchase the tract of land above referred to from the owner, Queen Victoria Jackson. This option expired on June 16, 1917, but was afterward extended to October 16, 1917. Pursuant to the provisions of the option contract, a deed conveying the land to the plaintiff was executed and placed in escrow in the First National Bank of Checotah, to be delivered to the plaintiff upon the payment of the purchase price.

On the 22d day of August, 1917, the plaintiff made a written application to the defendant Oklahoma Farm Mortgage Company for a loan of $11,800 upon said real estate. This application was made through H. H. Calhoun of Muskogee, upon the stationery of the defendant Oklahoma Farm Mortgage Company, and by him transmitted to said defendant. This application recites in substance that the money is borrowed to pay a part of the purchase price of said real estate, and is wanted immediately, and contains the following provisions:

"If, after examination of said land, the Oklahoma Farm Mortgage Company shall consent to make the loan applied for, or for any different amount acceptable to me, and I shall fail for any reason whatever to complete the same, I agree to pay all reasonable costs and charges incurred in making such examination and a per diem of $3 for the service of an examiner, and per diem and expenses shall be a lien upon the above described property."

On the same day the application was made the firm of Calhoun & Sons by said H. H. Calhoun addressed to the plaintiff the following notice:

"We are in receipt of your application for a loan of $11,800 on your farm of 337 acres in the Blaine Bottoms in Haskell county, known as the Queen Victoria Jackson farm, and beg to advise you that same has been inspected for this loan and approved and that we will be ready to close this loan as soon as abstracts can be continued and examined and requirements met."

The application was transmitted by Mr. Calhoun to the defendant Oklahoma Farm Mortgage Company at Oklahoma City, and at the time said application was transmitted or within a few days thereafter abstracts covering said lands and certified on November 10, 1915, were delivered to Mr. Calhoun by the plaintiff, and by him transmitted to the defendant Oklahoma Farm Mortgage Company.

On the 20th day of September, 1917, the Oklahoma Farm Mortgage Company prepared the bonds, deed of trust, notes, and mortgage referred to in the pleadings and transmitted the same to H. H. Calhoun at Muskogee for execution. The letter transmitting these instruments was exhibited to the plaintiff and made certain requirements as to the release of liens against said property, which the plaintiff was willing to comply with. Nothing was said in this letter with reference to the Lawrence-Stocker suit. These instruments were executed on the 28th day of September, 1917, and transmitted by him to the defendant Oklahoma Farm Mortgage Company, and by it recorded in Haskell county on the 4th day of October, 1917.

The defendant Oklahoma Farm Mortgage Company, it appears, on the 29th day of September, 1917, procured a supplemental abstract which showed the pendency of the Lawrence-Stocker suit, and on the 6th day of October, 1917, it notified Mr. Calhoun that the loan could not be made while said suit was pending. This letter was exhibited to the plaintiff, and on the 7th day of the same month the plaintiff notified the defendant Oklahoma Farm Mortgage Company, in effect, that he could not meet the requirement, and that if they did not intend to make the loan to release the mortgage and deed of trust. On the 8th day of October, 1917, the Oklahoma Farm Mortgage Company wrote the plaintiff a letter declining to release the mortgage and deed of trust. Other correspondence ensued, but no settlement was reached. The Oklahoma Farm Mortgage Company refused to make the loan unless the Lawrence-Stocker suit was dismissed, or to release the deed of trust and mortgage, except upon condition that the plaintiff pay to the defendant the sum of $1,652, which it claimed as a commission for securing a customer ready and willing to make said loan had the plaintiff been able to furnish a clear title. The plaintiff was not a party to the Lawrence-Stocker suit, and it is admitted that he informed H. H. Calhoun of the pendency of said suit at the time the application for a loan was made or within a few days thereafter.

On October 22, 1917, the deed from Queen Victoria Jackson to the plaintiff was filed for record, and on October 19, 1917, the plaintiff executed a general warranty deed conveying said real estate to Mamie B. Le-Flore. It is undisputed that the land at the time this conveyance was made was of the value of $50 an acre, and that the plaintiff was offered that price for it by the Dunklin Brothers, of Spiro, Okla., but the plaintiff was unable to consummate this sale by reason of his inability to secure the release of the deed of trust and mortgage above referred to. That later the plaintiff sold said land to Mamie B. LeFlore for $45 an acre, under a contract that the purchase price should not be paid until said instruments were released or canceled.

The case was tried to a jury upon the question of damages. There was a verdict for the plaintiff for $1,652, and the cancellation of the deed of trust and mortgage, and judgment and decree was entered accordingly. The defendants have appealed to this court, and assign as error: (1) The overruling of the demurrer to the petition; (2) the overruling of the defendants' demurrer to the evidence; (3) the overruling of the motion for a new trial; (4) errors of law occurring at the trial.

We will consider these assignments in the order presented. It is contended that the demurrer should have been sustained, for the reason that the petition does not state that the plaintiff had either the legal or equitable title to the lands or any interest therein at the time this action was commenced. The defendant contends that an action to quiet title and for cancellation of instruments as a cloud on the title can be maintained only by a person having some title or interest in the lands in controversy, and in support of this contention cites: Lewis v. Clements, 21 Okla. 167, 95 Pac. 769; Clark v. Holmes, 31 Okla. 164, 120 Pac. 642; Schock v. Fish, 45 Okla. 12, 144 Pas. 584; Starr v. Thompson, 80 Okla. 223, 195 Pac. 758; Linderberg v. Messmann, 86 Okla. 288, 207 Pac. 1067; Exchange Trust Co. v. Ireton, 88 Okla. 262, 213 Pac. 309.

We have examined these authorities, and are of the opinion that they do not apply to the situation presented in this case. The defendants had placed upon the record a deed of trust and mortgage, which published to the world that the defendant Oklahoma Farm Mortgage Company held valid liens against said real estate in the aggregate sum of $13,452. The defendant mortgage company also had in its possession negotiable notes and bonds aggregating said amount, for which no consideration had been paid.

The plaintiff was entitled to a cancellation of these instruments regardless of the effect the decree might have had upon the title to the real estate. 9 C. J. 1159, sec. 4; 4 R. C. L. 497, sec. 11. In addition to this, the plaintiff had conveyed these tracts of land by warranty deed with full covenants under the agreement that the purchase price

should not be paid until the deed of trust and mortgage were canceled. The plaintiff was not only bound by his covenants of warranty, but he had an interest in the subject-matter sufficient to support this action. Styer v. Sprague, 63 Minn. 414, 65 N. W. 659; Begole v. Hershey (Mich.) 48 N. W. 790; Heppenstall v. Leng (Pa.) '66 Atl. 991, 12 L. R. A. (N. S.) 652; Sutliff v. Smith (Kan.) 50 Pac. 455; Farmers' & Merchants' Bank v. Tipton (Kan.) 159 Pac. 1016; Pier v. Fond du Lac Co. (Wis.) 10 N. W. 686; Hinchman v. Weeks (Mich.) 48 N. W. 790; Remer v. Mackay, 35 Fed. 86; Jackson Milling Co. v. Scott (Wis.) 110 N. W. 184; Hounchin v. Salyards (Iowa) 133 N. W. 48; Jones v. Nixon, 102 Tenn. 95, 50 S. W. 740.

It is next contended that the demurrer should have been sustained for the reason that it is not affirmatively alleged that in recording the deed of trust and mortgage and the refusal to release said instruments the defendants were actuated by malice. In Ward et al. v. Midwest & Gulf Co., 97 Okla. 252, 223 Pac. 170, it is held that malice is an essential ingredient for the cause of action for slander of title, but malice, as here used, does not signify hatred or ill will.

"An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown." Section 499, Comp. St. 1921.

"Generally speaking, therefore every defamation is presumed by the law to be malicious." Newell on Slander and Libel (3 Ed.) sec. 386.

The deed of trust and mortgage recorded by the defendants were never operative, and according to the allegations of the petition were wrongfully recorded, and are, therefore, presumed to have been recorded maliciously.

It is next contended that the court erred in overruling the defendants' demurrer to the evidence for the reason that it was admitted on the trial that under the provisions of the application the defendant Oklahoma Farm Mortgage Company laid out and expended $57 in appraising the land, extending the abstracts, etc., and that the plaintiff could not maintain this action without tendering to the defendant said sum of $57. A sufficient answer to this contention is, that even conceding that the payment or tender of this sum was a condition precedent, all of the evidence tended to show that such offer would have been rejected, if it had been made. Rupard et al. v. Rees, 94 Okla. 49, 220 Pac. 893; Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468.

It is further contended that the demurrer to the evidence should have been sustained for the reason that the plaintiff's evidence disclosed that the loan was refused for the reason that the plaintiff was not able to furnish a clear title to said real estate. The application for the loan provided in terms as to what the defendant mortgage company should be paid in the event the plaintiff failed to complete the loan, and by it the defendant mortgage company was given a lien upon the lands to secure the payment of the amount which might become due under such circumstances. The defendant was fully secured and no excuse whatever appears for the recording of the deed of trust and mortgage at the time they were recorded. There was no error in overruling the demurrer to the evidence. The defendant mortgage company contends that it did not know of the existence of the Lawrence-Stocker suit at the time it filed the deed of trust and mortgage for record. This contention is not borne out by the evidence. Calhoun was clearly the agent of the Oklahoma Farm Mortgage Company, and he knew of the existence of the Lawrence-Stocker suit at, or about the time the application was made, and the title examiner of the defendant had the supplemental abstract and knew of the existence of said suit on the 1st day of October, 1917, and before the instruments were recorded. Their knowledge was the knowledge of their principal. Jenkins v. Helms et al., 89 Okla. 77, 213 Pac. 322; Langley v. Ford, 68 Okla. 83, 171 Pac. 471; Allison v. Crummey et al., 64 Okla. 20, 166 Pac. 691. There was no evidence offered on the part of the defendants tending to excuse or justify their conduct in recording these instruments or to in any way diminish the damages claimed by the plaintiff. The question as to the agency of H. H. Calhoun, and as to whether the defendant Oklahoma Farm Mortgage Company would have accepted the tender of $57 had it been made, were submitted to the jury under proper instruction, and the defendants are concluded upon these questions by the verdict. The court instructed the jury that the measure of damages was the difference between the amount the plaintiff actually received for the land and the amount he would have received had the deed of trust and mortgage not been of record. This is the proper measure of damages. Vaught v. Pettyjohn & Co., 104 Kan. 174, 178 Pac. 623.

The defendants contended that there was error in not submitting to the jury the question as to whether or not the defendants were actuated by malice in recording these instruments. No instruction to that effect

was requested by the defendants, and it is apparent that if the court had given such instruction and had informed the jury that malice would be inferred from the wrongful recording of the instruments as it would have been bound to have done, the result would have in no way been changed.

On the trial the defendant offered to prove that the plaintiff collected the rents upon the real estate for the year 1917. The sale of the land was not concluded until October of that year. It is disclosed that the lands were farm lands. The rents had accrued before the sale to LeFlore and before the offer of the Dunklin brothers. This evidence was not competent for any purpose.

It is finally contended that the judgment should be reversed as to the defendant Andrew Kingkade, for the reason that the evidence shows that his only connection with the transaction set forth in the pleadings was that of trustee. The difficulty of this contention is that there is no several assignment of error.

"A joint assignment of error must be good as to all who join it or it will be good as to none." Niles v. Citizens National Bank of El Reno, 110 Okla. 146, 236 Pac. 414, 2 Cyc. 1003, 3 C. J. 1501, 2 R. C. L. 142, sec. 166.

We have examined the entire record, and find no error prejudicial to the defendants, and recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 32 Cyc. p. 1332; anno. 12 L. R. A. (N. S.) 652; 5 R. C. L. p. 656. (2) 37 C. J. pp. 133, 135. (3) 38 Cyc., p. 135. (4) 37 C. J. p. 130; 9 A. L. R. 931.