SHANER v. WEST COAST LIFE INS. CO.
No. 1040.

Circuit Court of Appeals, Tenth Circuit.
Nov. 22, 1934.

Philip Hornbein and Isaac Mellman, both of Denver, Colo., for appellant.

Walter W. Blood, of Denver, Colo. (G. C. Bartels, Arthur H. Laws and Paul P. Eagleton, all of Denver, Colo., on the brief), for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action in equity to cancel a life insurance policy in the sum of $10,000 with an accompanying total and permanent disability provision.

On May 27, 1931, the insured submitted a signed application for the insurance in which it was expressly covenanted and agreed that the several statements, agreements, and an-

swers contained therein should be the basis and constitute a part of the consideration for the contract of insurance, and that the application and the policy should constitute the entire contract. It was stated therein that the insured had never suffered from a disease of the brain, nervous system, heart, blood vessels, lungs, stomach, intestines, liver, kidneys, or bladder; that he had never consulted a physician with respect to such a disease; that during the immediately preceding five years he had not consulted a physician nor been treated for any ailment; and that as far as he knew or believed he was then in good health. In addition, the instrument contained the following provisions:

"* * * (2) That no knowledge of any person and no statement made or given by or to any person shall bind the Company or in any manner affect its rights unless such knowledge and statement are set forth in writing in this application. (3) That if I pay the first premium at the time this application is signed, insurance shall date from the date of approval of this application at the Company's Home Office in San Francisco, provided I shall then be in the same condition of insurability as shown by this application; and provided further, that approval of this application shall be subject to the effecting of reinsurance if the Company shall determine to reinsure any portion of this risk; and in case I do not pay the premium at the date of signing this application, the policy issued hereunder shall not become effective until such policy shall have been delivered to and accepted by me and the first premium thereon shall have been paid and accepted by the Company, and unless during all such time I shall have continued in good health. * * *

"I hereby Certify that I have carefully read all statements and answers as written or printed herein and in the application for insurance; that each is written correctly as made by me and is full, complete and true."

The detailed statements were false in part. Insured was a patient at Beth Israel Hospital in Denver during August, 1929, and was diagnosed and treated there for Buerger's disease. That is a disease of slow development involving the arteries of the extremities. It causes the blood to clot, the arteries to occlude, and produces excruciating pain and coldness of the hands and feet. Gangrene frequently follows and necessitates amputation of the affected extremity. Insured was a patient at Colorado General Hospital in Denver from March to August, 1930, and again from June 2 to August 17, 1931. On each occasion he was diagnosed and treated for that disease. While there and on July 31, 1931, he underwent a perilumbar ganglionectomy which was intended to relieve his diseased condition. On two different occasions he furnished attending physicians a history indicating that he had had the disease since 1928. One foot was amputated before the trial, but the record fails to show the exact date.

Appropriately alleging that the statements and representations contained in the application were false and were fraudulently made with the intent and for the purpose of securing the insurance; that each of them was a material representation and warranty; that relying upon them and believing them to be true and without knowing the facts, the policy issued with the disability provision attached on June 9, 1931; that the falsity of such statements was not known until February 23, 1932; that on or about March 15, 1932, it rescinded such policy and tendered repayment of all premiums received and that the tender was refused—the company prayed that the policy be canceled and annulled.

By answer insured denied the falsity or materiality of his statements; denied that the company relied and acted upon them; denied that the company did not know the true facts until February 23, 1932; denied that repayment of the premiums had been tendered, and expressly alleged that the answers in question were made in the course of his medical examination; that he answered all such questions truthfully and to the best of his knowledge and belief; that the medical examiner made certain notations and writing upon the examination blank, but did not fully, completely, and truthfully write the answers given; that at the conclusion of the examination the examiner stated that the document contained the answers given and directed insured to sign it; that relying upon such statement, he signed the instrument without reading it and without knowing that it failed to state correctly his answers; that not relying upon his statements nor believing them to be true, the company requested insured to submit to another medical examination to be conducted by its examiner; that he did so on or about November 2, 1931, at which time he answered fully and truthfully all questions asked with respect to his ailments and treatment therefor during the preceding five years; that thereafter and on or about December 2, 1931, he paid a semiannual premium on such policy; and that by reason of these facts the company had waived and was estopped to assert fraud inhering in the application.

The trial court found that the statements and representations that insured had never suffered from any disease of the nervous system, heart, or blood vessels, had not consulted a physician or been treated for such disease and was then in good health, were false and were known to him to be false at the time they were made; that they were material representations and warranties and that the company relied and acted upon them; that the company exercised due diligence to discover the facts, but did not learn the falsity of such statements and representations until the latter part of December, 1931; that thereupon repayment of all premiums received was offered insured and refused without objection to its form or amount. A decree was entered that upon payment into the registry of the court of an amount equal to the total premiums and interest thereon, the policy be canceled and surrendered to the company. The case is here on appeal to review that action.

■ The policy contained the quite common provision that after one year from its effective date it should be incontestable except for nonpayment of premium. The bill was filed one day prior to the expiration of that period. Rescission and cancellation of an insurance contract because of fraudulent representations made to induce its execution where, on account of such an incontestable provision or for other reason there is no remedy at law, is one of the recognized functions of equity jurisprudence. Jefferson Standard Life Ins. Co. v. Keeton (C. C. A.) 292 F. 53; Jones v. Reliance Life Ins. Co. (C. C. A.) 11 F.(2d) 69; Brown v. Pacific Mut. Life Ins. Co. (C. C. A.) 62 F.(2d) 711; Jefferson Standard Life Ins. Co. v. McIntyre (C. C. A.) 294 F. 886; New York Life Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241; Equitable Life Assurance Society v. Schwartz (C. C. A.) 42 F.(2d) 646; Keystone Dairy Co. v. New York Life Ins. Co. (C. C. A.) 19 F.(2d) 68; New York Life Ins. Co. v. Seymour (C. C. A.) 45 F.(2d) 47, 73 A. L. R. 1523; Peake v. Lincoln Nat. Life Ins. Co. (C. C. A.) 15 F.(2d) 303; New York Life Ins. Co. v. Hurt (C. C. A.) 35 F.(2d) 92; Lincoln Nat. Life Ins. Co. v. Hammer (C. C. A.) 41 F.(2d) 12; New York Life Ins. Co. v. Miller (C. C. A.) 73 F.(2d) 350.

■■ The finding of the trial court that insured made the false and fraudulent statements and representations contained in the application is challenged. It is said that there is no evidence from any witness to support it. The application contained the definite statement that insured had carefully read all the statements and answers written or printed therein; that each was written correctly as made by him and was full, complete, and true. He signed the application and submitted it to the company. It constituted a plain statement that he gave the answers and that they were true. He testified that he did not give them, but the court found otherwise. That conclusion may have been induced by a comparison of the handwriting of the answers with that of the signature. They may have been identical. The original instrument was submitted to the trial court, but is not before us. In addition, it appears from the uncontradicted testimony that at the time he submitted to the second medical examination late in October or early in November, 1931, he stated that his initial attack of Buerger's disease was a sudden one occurring in the preceding July and that he had fully recovered from it. That statement was plainly untrue, and he failed to disclose his previous hospital confinements or that Dr. Darley had treated him for that disease. The court was well warranted in finding from the facts and circumstances, together with their reasonable inferences, that insured made the statements and representations contained in the application. It is urged that under the law of Colorado an insured is not bound by false statements inserted in an application by the medical examiner of the company without fraud or negligence on the part of the insured. The cases of Pacific Mut. Life Ins. Co. v. Van Fleet, 47 Colo. 401, 107 P. 1087, Northwestern Mut. Life Ins. Co. v. Farnsworth, 60 Colo. 324, 153 P. 699, and New York Life Ins. Co. v. Fukushima, 74 Colo. 236, 220 P. 994, are cited to sustain the contention. Those cases have no application here and it is unnecessary for us to explore that question, because the court expressly found that the insured made the statements. That finding is supported by substantial evidence and will not be overthrown on appeal. Moreover, he received the policy and retained it in his possession for almost a year before this suit was instituted. The application containing the statements and representations was attached and made a part of it. Assuming that the answers were inserted by the medical examiner, insured could not retain the policy without ratifying the deception and becoming a party to it. Its retention constituted approval of the false statements and precluded him from reaping the fruits of the fraud. New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60

L. Ed. 1202; Franco v. New York Life Ins. Co. (C. C. A.) 53 F.(2d) 562.

■ The next argument advanced is that even though fraud was practiced, the company waived it by accepting the semi-annual premium in December, 1931, after the second physical examination had been conducted and all the facts made known. Waiver presupposes knowledge of the existing facts. Home Life Ins. Co. v. Myers (C. C. A.) 112 F. 846; Brotherhood of Railroad Trainmen v. Roberts, 48 Tex. Civ. App. 325, 107 S. W. 626; Sovereign Camp, W. O. W., v. Cameron (Tex. Civ. App.) 41 S.W.(2d) 283; Germania Life Ins. Co. v. Lauer, 123 Ky. 727, 97 S. W. 363. The premium was paid on December 1st. A temporary receipt was given for it then and an official receipt was issued on the 21st. The company did not know at either time that the policy had been secured through fraud. The agent of the company overheard a conversation sixty or ninety days after the policy issued that the health of the insured was not good. He wrote the company and it directed that an investigation be made. That was begun and the second examination was a part of it. Insured stated in connection with that examination that he was first stricken in the preceding July; that Dr. Packard performed the operation; that he had fully recovered and was working regularly. That was all the information at hand when the premium was paid. It obviously did not justify cancellation because according to that statement the policy antedated the illness. Concealment of the fact that insured had been in hospitals twice before, was told then that he had Buerger's disease, and that Dr. Darley treated him for it necessitated further investigation. The company made it. A physician was employed to search the records of the hospitals in Denver, and in that way the true facts were ascertained late in December, after the premium in question was paid. The cancellation of an insurance policy is a matter of serious concern to both insurer and insured. It is a step which should be taken with due caution. While an insurer must act to annul the contract within a reasonable time after discovering the falsity of the representations and warranties contained in the application, it is entitled to a reasonable time within which to make its investigation and determine what action should be taken. Good faith to the insured requires that. Fountain & Herrington v. Mut. Life Ins. Co. (C. C. A.) 55 F.(2d) 120. We think the company proceeded with reasonable dispatch in making its investigation and in acting after learning the facts. It was not guilty of laches and did not waive the fraud.

■ It is urged that the decree should be reversed because no proof was submitted to show that the alleged misrepresentations were material or that the company relied upon them. A false representation of the kind in question knowingly made is material as a matter of law without proof and its submission necessarily implies an intent to deceive the insurer. Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A.) 260 F. 641; Dudgeon v. Mutual Benefit H. & A. Ass'n (C. C. A.) 70 F.(2d) 49; Mutual Life Ins. Co. v. Hilton-Green, supra. The purpose of such questions and answers is to elicit relevant, essential, and sometimes decisive information which may not be disclosed by the medical examiner's efforts. It may well supplement the examination and furnish the basis for determining whether further inquiries should be made. Since that is the function of the information, it will be presumed that the company considered it.

■ The validity of the tender of premiums paid is brought in question. It is contended that the money was not actually produced and physically offered to insured and that the proposed amount was insufficient. The court expressly found upon substantial evidence that the tender was made and rejected without objection as to form or amount. There is evidence in the record that the agent of the company visited insured at a hospital, advised him that the company had determined to rescind the policy; that he was then prepared to repay the amount of the premiums paid upon it, and that insured refused the offer and directed the agent to consult his brother about the matter. The agent thereafter offered the money to the brother and it was refused. The offer was renewed early in the trial and not accepted. The agent had "in the neighborhood of two hundred and thirty or two hundred and forty dollars" in currency at the time he made the offer to insured at the hospital. The offer was rejected without objection respecting its form or amount. When a party, able and willing to do so, offers to pay another a sum of money and is advised that it will not be accepted, the offer amounts to a tender without the money being produced. Refusal to accept it dispenses with the necessity to produce the money. The right is waived upon such refusal. The law does not require one to do a vain or useless thing. Continental Oil Co. v. Mulich (C. C. A.) 70 F.(2d) 521; Hills v. Exchange Bank, 105 U. S. 319, 26 L. Ed. 1052; Stras-

bourger v. Leerburger, 233 N. Y. 55, 134 N. E. 834; Old Kentucky Distillery v. Stromberg-Mullins Co., 54 Mont. 285, 169 P. 734; Baum v. Northern Pac. Ry. Co., 55 Mont. 219, 175 P. 872; Hills v. Mutual Oil Co., 65 Mont. 317, 211 P. 314; Grier v. McCormick, 100 Okl. 36, 227 P. 400; Mitchell v. Reeder, 104 Okl. 48, 231 P. 268; Kingkade v. Plummer, 111 Okl. 197, 239 P. 628; Steckel v. Selix, 198 Iowa, 339, 197 N. W. 918; White v. Dennis (Tex. Civ. App.) 220 S. W. 161; Creager v. Beamer Syndicate (Tex. Civ. App.) 274 S. W. 323; Grippo v. Davis, 92 Conn. 693, 104 A. 165. And the decree of cancellation is conditioned upon payment into the registry of the court of the amount paid as premiums with accrued interest thereon. That is all equity requires.

■ The policy cannot be sustained for an additional reason. The application expressly provided that the insurance should not go into effect unless the applicant be in the same condition of insurability as shown therein at the time the application was accepted and the policy issued and further that he continue in good health until the policy was delivered and the first premium paid thereon. He entered the hospital under the name of "Harry Shaner" five days after the application was signed for treatment for Buerger's disease and was confined there for that purpose at the time the application was accepted and the policy issued. He then had a far advanced case of that serious malady and remained there more than two months during which time he submitted to an operation for the alleviation of his condition. He had suffered from the disease almost three years and had been in hospitals twice before. Manifestly he was not in the same condition of insurability at the time the application was accepted and the policy issued as that shown in the application. And he was not in good health at the time the policy was delivered and the first premium paid thereon. The provision is a valid and enforceable one. The simplest rudiments of fairness require an applicant for insurance to disclose to the company any adverse change in his physical condition occurring after the application is submitted and before the policy is issued and delivered. Failure to do that here rendered the policy unenforceable because in virtue of the contractual provision it did not go into effect. Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; Hurt v. New York Life Ins. Co. (C. C. A.) 51 F.(2d) 936; Gill v. Mutual Life Ins. Co. (C. C. A.) 63 F.(2d) 967, and cases there cited.

We think the decree was right, and it is affirmed.