DETROIT LUMBER CO. *v.* CLEFF.

1. HUSBAND AND WIFE — PRINCIPAL AND AGENT — IMPROVEMENTS TO PROPERTY OF WIFE.

   A verdict should not be directed against a married woman, in an action for lumber and building materials delivered to her husband on his credit and used by him in constructing houses upon her property, with the knowledge, but not under the directions, of the wife who furnished him money for the purpose, but never ordered or inspected materials or examined the completed buildings; and the question of the husband's agency for defendant is for the jury.

2. SAME—CONTRACTS OF MARRIED WOMEN.

   A married woman can make no obligation except on account of her own property, and there can be no presumption of her husband's authority to act for the wife.

3. SAME—BUILDING CONTRACTS—MATERIALS.

   A married woman is not responsible for improvements made on her real property by her husband, without any extension of credit to her from one furnishing materials.

Error to Wayne; Murfin, J. Submitted October 18, 1910. (Docket No. 84.) Decided November 11, 1910. Rehearing denied April 1, 1911.

Assumpsit by the Detroit Lumber Company, a corporation, against Rose Cleff. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Reversed.

*Bumps & Bishop*, for appellant.

*E. T. Berger*, for appellee.

McALVAY, J. Plaintiff recovered a judgment by direction of the court in an action of assumpsit against defendant for certain lumber claimed to have been sold and delivered by plaintiff to John Cleff, her husband, acting as

her agent, and which was delivered to him and went into the construction of certain houses built upon land belonging to defendant in the city of Detroit. The facts disclosed by this record are that plaintiff for several years had dealings with John Cleff, who was a contractor and builder, selling him lumber which was used by him in his business, and extended credit to him for such lumber, keeping an account with him in its books, which included the lumber for which claim is made in the suit at bar; that plaintiff, upon a balance due it upon this account, brought suit and recovered judgment against him in justice's court in the city of Detroit, January 25, 1907, for $500 and costs, which judgment included the charges made for all of the lumber claimed in this suit to have been sold and delivered to defendant. On that judgment an execution issued and was returned unsatisfied. John Cleff afterwards was adjudicated a bankrupt, and this judgment was filed by defendant as a claim, and proven against him, in bankruptcy. Afterwards this suit was instituted by plaintiff in justice's court, and from a judgment of no cause of action it appealed to the circuit court, with a result in its favor, as already stated.

Upon the trial, in addition to the facts already stated, it appeared that none of the agents of plaintiff corporation knew defendant, or ever extended any credit to her, or to John Cleff on her account; that the account and dealings with John Cleff extended over a term of several years, covering quite a number of contracts. Plaintiff's ledger contained a statement of lumber charged to John Cleff as being used upon various buildings which he was erecting in different parts of the city; but no lumber was charged under the head of the "Maybury Grand" buildings, which were the buildings erected on defendant's lots. For the purpose of showing delivery of this lumber, the judgment and files of the case against John Cleff were offered and received in evidence over the objection of defendant, upon the ground, as claimed by plaintiff, that it was *res adjudicata* of that fact. On being asked by the

court whether delivery of this lumber on this "Maybury Grand" job was controverted, defendant's counsel asserted that it was denied that any of the lumber was ever so delivered. To further show delivery, plaintiff's salesman was allowed to testify that on a former trial he had compared delivery tickets with the bill of particulars, and checked off all of the items on it, and identified it by the check marks. The delivery tickets were not offered, produced, or accounted for, and witness had no personal knowledge of the deliveries. The bill of particulars was then received in evidence, subject to objection and exception of defendant. One witness, a teamster, testified that four years before he remembered that he had delivered some lumber for plaintiff at "Maybury Grand" job, but not all of it, and did not know how much he had delivered.

Plaintiff called defendant as its witness, who testified that she owned this property; that the houses were built by her husband on her property with her knowledge; that she furnished him money, and he owed her other money at the time. She had nothing to do with the building. Her husband did not consult her as to how the houses should be built, and she never ordered or inspected any materials which went into the buildings. Defendant offered no testimony, claiming that plaintiff had made no case against her.

Plaintiff relies upon the relation of agent and principal, claimed by it to have existed between the husband and wife, which relation was not disclosed at the time, and in fact not ascertained until after its judgment was proved in bankruptcy. Upon this theory of the case a verdict was directed by the court. This would not be warranted, unless clearly supported by the record; and we do not find that it is. No agency is made out by plaintiff from the testimony of the defendant, who was its witness, and upon which it relies for recovery. On the contrary, her testimony negatives that theory, and from such testimony it may be reasonably inferred that he was not acting as

her agent.   In *Fechheimer* v. *Peirce*, 70 Mich., at page
441 ( 38 N. W. 326 ), this court said:

"It is the law of this State that a married woman can
make no obligation except on account of her own property,
and that any one seeking to hold her must make out an
affirmative case.   It is also well settled that there can be
no presumption of a husband's authority to act for his
wife, and that a person seeking to hold her for acts done
by another must show affirmatively full authority to bind
her."

In support of this rule the court cites many Michigan
cases, from two of which we quote briefly:

"A married woman is not liable for the cost of improve-
ments put into her own house, where the work is done in
reliance on the responsibility of her husband and by his
directions."   *Holmes* v. *Bronson*, 43 Mich. 562 (6 N. W.
89).

"It has been decided on several occasions by this court
that a married woman is not responsible in person, and
that her land is not bound, for improvements and expend-
itures made on it by her husband, where no credit has
been given to her, and where he has contracted on her
behalf."   *Morrison* v. *Berry*, 42 Mich. 393 (4 N. W. 733,
36 Am. Rep. 446).

The case made by plaintiff did not warrant the direc-
tion of a verdict by the court in its favor.   This conclu-
sion makes it unnecessary to consider other questions.

The judgment is reversed, and a new trial ordered.

HOOKER, MOORE, BROOKE, and BLAIR, JJ., con-
curred.