EADUS *v.* HUNTER.

1. HUSBAND AND WIFE—ESTATES BY ENTIRETIES—ALIENATION.
   In property held by husband and wife by entireties, the estates of husband and wife must abide always together and cannot be separately alienated.

2. SAME—LEASE NOT EFFECTIVE UNTIL DELIVERY BY BOTH.
   A lease of real estate held by entireties is not effective until delivery by both lessors, either personally or by authorized agent.

3. SAME—WHEN HUSBAND WIFE'S AGENT TO MAKE DELIVERY OF LEASE.
   Where wife executed lease on property held by entireties, and gave it to her husband, she constituted him her agent to make delivery.

4. SAME—ESCROW AGREEMENT WITHIN SCOPE OF HUSBAND'S AUTHORITY TO MAKE DELIVERY—OIL AND GAS LEASE.
   Where oil and gas lease on land held by entireties was executed by husband and wife and deposited in escrow under instrument signed by husband alone conditioning delivery to

lessees on their commencing drilling within certain time, escrow was within scope of husband's authority, was binding on wife who agreed thereto, and thereafter husband had no authority to revoke same without her consent.

5. SAME—HUSBAND'S AGENCY FOR WIFE NOT PRESUMED.

There is no presumption of agency of husband for wife, and while his agency and authority may be implied from circumstances, his authority is no more extensive in scope or longer in duration than that of any other agent similarly constituted.

6. MINES AND MINERALS—UNSEVERED OIL AND GAS PART OF REAL ESTATE—NOT INCOME.

Oil and gas, unsevered, are part of the real estate, and where held by entireties are not alienable by husband alone on theory that they are income.

7. SAME—HUSBAND AND WIFE—OIL AND GAS LEASE—DELIVERY.

Where oil and gas lease on land held by entireties was deposited in escrow conditioning delivery to lessees on their commencing drilling within certain time, their failure to begin drilling within specified time terminated their rights, although husband, without wife's consent, undertook to release escrow.

WIEST, C. J., and BUTZEL, J., dissenting.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 11, 1929. (Docket No. 57, Calendar No. 34,412.) Decided January 24, 1930.

Bill by Fred A. Eadus and another against Alfred J. Hunter and others to cancel an oil and gas lease. From a decree for defendants, plaintiffs appeal. Reversed, and decree for plaintiffs entered.

*Alexis J. Rogoski,* for plaintiffs.

*Cross, Foote & Sessions,* for defendants.

FEAD, J. August 13, 1928, plaintiffs executed a 10-year oil and gas lease on property held by the entire-

ties. It ran to defendant Hunter, but was negotiated by Moyer for the benefit of all the defendants. After Mrs. Eadus signed, Eadus and Moyer deposited the lease in a bank in escrow, under an instrument drafted by Moyer but signed by Eadus alone, conditioning delivery of the lease to defendants on their commencing actual drilling within 60 days after a near-by well should produce. The adjoining well produced on September 14th. The condition for delivery was not performed, but about October 23d the lease was withdrawn from escrow by Eadus and Moyer, on written order of Eadus alone, on payment of $100 to him, without consent of Mrs. Eadus, and was given to defendants, who recorded it. This action is to cancel the lease and clear the record.

Plaintiffs claim that when Mrs. Eadus executed the lease, she orally agreed to, and insisted upon, the terms of the escrow. Defendants claim the escrow agreement was drafted at the bank after Mrs. Eadus executed the lease, she never saw it and had no part in it. The court held with defendants on this issue of fact and took the position that, as Eadus and Moyer alone had made the deposit, they could withdraw the lease and complete delivery.

There was no indication of fraud or overreaching on the part of defendants. Accepting the court's finding of fact, the question is whether Eadus had the legal right to withdraw the lease from escrow and make delivery without his wife's consent. It seems to be a case of first impression.

It must be kept in mind that the lease covers property held by the entireties, in which the estates of the husband and wife must abide always together and cannot be separately alienated. *Zeigen* v. *Roiser*, 200 Mich. 328; *Agar* v. *Streeter*, 183 Mich. 600. The deposit of the lease in escrow was binding

on both or neither. If, as Mr. Justice Wiest avers, "the escrow agreement made by the husband did not inure to the benefit of the wife," then she was not bound to its obligations, and, because of the indivisible character of the estate, neither was the husband. The lease could not be half free and half slave of the escrow.

A lease of real estate held by the entireties is not effective until delivery by both the lessors, either personally or by authorized agent. Mrs. Eadus made no personal delivery of any kind to the lessee. When she executed the lease and gave it to her husband, she constituted him her agent to make delivery. *DeGraffenreid* v. *Elliott,* 123 Kan. 477 (255 Pac. 971). The effect of the escrow and of final delivery on her must depend upon the extent of the authority of Eadus as her agent. The agency and authority may be implied from circumstances (30 C. J. p. 621, 13 R. C. L. 1167, 1169), and are to be determined from the fact that Mrs. Eadus executed the lease and gave it to her husband without instructions. Undoubtedly this authorized him to make unconditional delivery, but it does not follow that he was not authorized to make a conditional delivery binding on her.

Engaged in household duties or social activities, or otherwise, wives commonly leave to husbands the details and closing of transactions of conveyance. It is a reasonable implication, consistent with ordinary conduct and necessary to the security of conveyances, that when a wife executes an instrument jointly with her husband and intrusts it to him without direction or instruction, she constitutes him her agent to complete the immediate transaction for her as well as himself in such reasonable manner, consistent with the effect and purpose of the convey-

ance, as his discretion and judgment shall determine. *DeGraffenreid* v. *Elliott, supra; Bull* v. *Coe,* 77 Cal. 54 (18 Pac. 808, 11 Am. St. Rep. 235).

In *Bott* v. *Wright,* 62 Tex. Civ. App. 632 (132 S. W. 960), the court said:

"Where, however, as there is evidence here tending to show, the wife surrenders to her husband a deed to her separate property, duly made and acknowledged, for the purpose of delivery, we think authority in the husband is to be implied to make such reasonable stipulations relating to the delivery of the deed to the grantee as shall not be violative of her instructions or in fraud of her rights."

In *Hughes* v. *Thistlewood,* 40 Kan. 232 (19 Pac. 629), involving a homestead, the purchaser drew an individual draft for the purchase price. The deed and draft were placed in escrow to await returns on the draft. The wife did not sign the escrow agreement and claimed the husband had no authority to deliver the deed except for cash. They attempted to revoke the escrow and the action was to compel delivery. The court held the escrow binding on both, and said:

"When she joined her husband in making and acknowledging the conveyance, and placed the same in his hands for delivery, she made him her agent to arrange the details of accepting payment and completing delivery."

When Eadus deposited the lease in escrow, he did more than "attach a string" of his own to delivery. To the extent of his authority as his wife's agent, he carried her consent into the escrow and bound her as well as himself to a new contract. The benefits of the lease to plaintiffs lay in drilling for and

discovering oil and gas on their premises. The deposit in escrow to secure prompt drilling was a reasonable condition on delivery, consonant with the purpose of the lease, not in violation of the wife's instructions nor in fraud of her rights. It was within the scope of the husband's authority, and the wife could not revoke the escrow during the period of the condition without the consent of all other parties. 21 C. J. p. 870. Thereafter the husband had no authority, without her acquiescence, to change the terms to which she had agreed. *Bailey* v. *Grover*, 237 Mich. 548.

There is no presumption of agency of a husband for a wife (*Detroit Lumber Co.* v. *Cleff*, 164 Mich. 276); and while his agency and authority may be implied from circumstances, his authority is no more extensive in scope or longer in duration than that of any agent similarly constituted. 13 R. C. L. p. 1168.

After the deposit in escrow, Mrs. Eadus conferred on her husband no authority to further manage the transaction for her, nor were there circumstances or a course of dealing from which new authority or a continuance of the original power to make unconditional delivery could be implied. Whatever authority he had to release the escrow is to be implied from her originally intrusting the lease to him without instructions.

It is to be noted that the contract of escrow was not a mere incident in the collection of the purchase price or the arrangement of a detail of the bargain, but amounted to a modification of the lease itself in the important respect of the time to begin drilling. As a corollary to her obligations under the contract, which she could not escape, Mrs. Eadus was entitled to its benefits, of which she could not be deprived without her consent. She could feel secure that,

under the terms of the escrow, the development of her property would be speedy or its control returned to plaintiffs. This security arose out of a binding contract to which she was a party as fully as though she had been a signatory to it. In my opinion, the interpolation of this binding contract, made in pursuance of powers she had given her husband, exhausted his original authority, and he could not release the escrow and make unconditional delivery without further authority conferred, expressly or by implication, after the deposit.

Oil and gas, unsevered, are part of the real estate. 40 C. J. p. 904. Counsel for defendants present no authority to sustain their contention that they are income alienable by the husband alone, under *Way* v. *Root,* 174 Mich. 418.

The decree will be reversed, and one entered for plaintiffs canceling the lease and clearing the record, with costs.

CLARK, POTTER, and NORTH, JJ., concurred with FEAD, J.

SHARPE, J. (*concurring*). The second paragraph of plaintiffs' verified bill of complaint reads as follows:

"That it was part of the agreement between the parties that said oil and gas lease was to be held by the Peoples State Bank of the city of Muskegon, Michigan, in escrow, according to a certain agreement. A copy which is hereto attached and made a part of this bill of complaint and marked Exhibit B. And it was agreed that said oil and gas lease was not to be recorded by the defendants herein until drilling had been actually begun upon said property."

The second paragraph of the "joint and several answer" of the defendants, verified by the defendant Moyer, reads as follows:

"They admit that said oil and gas lease was first placed in escrow with the Peoples State Bank of Muskegon, as stated in the second paragraph of said bill, but aver the fact to be that the original agreement with reference thereto was afterwards modified so as to permit immediate delivery and recording of said lease, and that as a consideration for such modification the plaintiffs were paid the sum of $100, and that for the same consideration the time for commencing the drilling of a well on the leased premises was altered and extended."

The issue was thus squarely presented as to whether, after deposit of the escrow agreement, there was a modification thereof which permitted its withdrawal and relieved the lessee from his undertaking to begin drilling upon the land "within sixty days from the date" when the well then being drilled in the same section produced oil or gas in paying quantities, which date is conceded to be September 14, 1928.

The fact that Fred Eadus, for a consideration paid to him by the defendants, authorized withdrawal of the agreement from escrow, is clearly established. That Katherine J. Eadus, his wife, objected thereto, when informed of his action, is also clearly established. The only question presented on this record, as I view it, is whether his act in doing so is binding upon Mrs. Eadus. Their title to this property as husband and wife was an estate by the entireties. The escrow agreement was in the nature of a condition annexed to the lease for the benefit of both. While not signed by her, it was delivered with her

consent, and both parties concede that it was binding upon her. In my opinion, she could not be deprived of the benefit accruing to her thereunder by his action alone. She repudiated it when first informed of what he had done, and was in no way bound thereby. In legal effect, it remained in the bank, and defendants' leasehold rights were subject to its provisions, and, as defendants did not begin drilling at the time fixed therein for doing so, their rights under the lease became terminated, and the plaintiffs were entitled to have the lease declared null and void and its record removed as a cloud upon their title as prayed for in their bill of complaint.

For this reason I concur in the conclusion reached by Mr. Justice FEAD.

CLARK, J., concurred with SHARPE, J.

WIEST, C. J. (*dissenting*). I am in accord with the finding of the circuit judge that the escrow agreement was solely between Mr. Eadus and the lessee after the lease was executed and in the hands of Mr. Eadus for unconditional delivery.

The escrow agreement made by the husband did not inure to the benefit of the wife and estop the husband from making such a delivery as he had a right to make in the first instance. What he did without her knowledge he could undo without her consent. She attached no condition precedent to delivery. He attached a string and then cut it.

I think the decree dismissing the bill should be affirmed, with costs to defendants.

BUTZEL, J., concurred with WIEST, C. J. McDONALD, J., took no part in this decision.