EADUS *v.* HUNTER.

1. ESTOPPEL—ESCROW—HUSBAND'S WRONGFUL DELIVERY—RATIFI-
CATION BY WIFE.

   Husband's delivery of escrowed oil and gas lease of property
   they owned by the entireties contrary to wife's rights therein
   *held,* ratified by wife, where she used money received therefor
   knowing it came to her by reason of such delivery, and es-
   topped her from recovering damages resulting therefrom.

2. TROVER AND CONVERSION—REMEDIES.

   Trover is not the remedy of lessors for claimed conversion of an
   oil and gas lease by recording it after delivery from escrow,
   where wrong done lessors was in not entering into new lease.

3. MINES AND MINERALS—OIL AND GAS IN PLACE.

   Oil and gas, unsevered, are part of the real estate and as such
   are not property for the conversion of which an action of
   trover will lie, it being a remedy for wrongful removal after
   severance.

4. SAME—OPPORTUNITY TO SEVER OIL AND GAS.

   Deprivation of opportunity to remove oil and gas from the con-
   taining soil does not constitute conversion.

5. EVIDENCE—VALUE OF LAND—SPECULATIVE DAMAGES.

   Testimony, in action for claimed conversion of leasehold interest
   under oil and gas lease, relative to lessened value of lands by
   reason of nearby wells and possible effect of drainage of oil
   *held,* highly speculative.

6. DAMAGES—EXCESSIVE—CONVERSION OF OIL AND GAS LEASEHOLD
INTEREST.

   Judgment of $8,000 for alleged conversion of oil and gas lease-
   hold interest *held,* not only excessive because of speculative
   nature of testimony as to damages, but based on elements not
   within the scope of the action of trover for such conversion,
   where measured by what could have obtained had there been
   no lease.

7. Fraud—Evidence—Conversion of Oil and Gas Leasehold
   Interest.

   Evidence, in action for alleged conversion of leasehold interest
       under oil and gas lease delivered from escrow by lessor to
       lessee for $100 paid for extension *held*, insufficient to establish
       fraud, where extension was not executed, $100 was not re-
       turned and lease was recorded by defendants upon advice of
       their attorney.

   Potter, North, and Fead, JJ., dissenting.

Appeal from Muskegon; Vanderwerp (John), J.
Submitted January 12, 1934. (Docket No. 30, Cal-
endar No. 37,478.) Decided September 18, 1934.

Trover by Fred A. Eadus and wife against Alfred
J. Hunter and William H. Gage for alleged conver-
sion of an oil and gas leasehold interest. Judgment
for plaintiffs. Defendants appeal. Reversed, and
new trial granted.

*Harry D. Reber,* for plaintiffs.

*Penny & Clark* and *Cross, Foote & Sessions,* for
defendants.

Wiest, J. I cannot join in the opinion of Mr.
Justice Fead.

Counsel for plaintiffs, at the trial, disclaimed that
the action was for slander of title and stated that
it was only to recover damages "for conversion of
the leasehold interest under the lease."

As I shall endeavor to point out in the course of
this opinion plaintiffs, by their own acts, are estopped
from having substantial damages; the husband by
direct acts, and the wife by acquiescence and
waiver; and in any event the damages are not only
excessive but, in large measure, based upon ele-
ments not within the scope of the action.

In *Eadus* v. *Hunter,* 249 Mich. 190, it was held that, after deposit of the lease in escrow by Mr. Eadus, Mrs. Eadus conferred on her husband no authority to further manage the transaction for her, nor were there circumstances or a course of dealing from which new authority or a continuance of the original power to make unconditional delivery could be implied. The lease was, therefore, canceled and, upon that holding, plaintiffs, in the action at bar, have been awarded $8,000 damages, occasioned, it is claimed, by defendants wrongfully obtaining the lease and placing it of record.

If the lease was delivered by Mr. Eadus, contrary to the rights of Mrs. Eadus, and she learned of the delivery and knew that money coming to her hands was by reason of such delivery and used the money, instead of repudiating the transaction, then she ratified what Mr. Eadus had done and is estopped from recovering damages. The dearth of evidence on this point in the previous case is now supplied by this record.

Plaintiff Fred Eadus took the lease out of escrow and both plaintiffs were trying to obtain a substitute lease when it was placed of record.

Plaintiffs filed an amended declaration in May, 1932. An answer to the amended declaration averred payment of $100 to plaintiffs as a "consideration for the release of said lease from escrow and the immediate delivery thereof to defendants for recording, and said plaintiffs have not, nor has either of them, returned or offered to return said $100 to defendants, but on the contrary have applied the same to their own use and benefit."

In reply to such answer plaintiffs pleaded that "the sum of $100 was paid to Fred A. Eadus in consideration of his consenting to the release of said

lease from escrow temporarily so that a new lease might be executed whereby the defendants would obtain an extension of time of 60 days additional; that plaintiff Katherine J. Eadus had no use or benefit of the said sum of $100 or any part thereof.''

Plaintiff Fred Eadus took the lease out of escrow and both plaintiffs were trying to obtain a substitute lease when it was placed of record. Mrs. Eadus testified:

''My husband told me afterwards about getting the $100 from Mr. Gage. I understood that he was to pay it back. What I told him to do before I went to work was to go to the bank and borrow it and get a signer. We wanted the money to send my daughter at college. She was at Ypsilanti and needed her tuition money and other expenses and it had to be paid right at that time for her quarter semester. * * * I knew the lease had been taken out of the bank. My husband told me that night. I didn't know at that time that my husband had gotten $100 from Mr. Gage. I didn't think my husband had the $100 yet. I cannot tell you for sure whether my husband got the lease before or after he got the $100. Mr. Hunter told me that he and Mr. Gage would come over Monday night and we would talk it over and be friendly about it, we weren't going to have trouble about it. I hadn't had trouble with Mr. Hunter and I never saw Mr. Gage before that. Mr. Hunter said we were going to be on friendly terms. I was angry because they took the lease out of the bank. I knew at that time that the lease had been taken out. That is why I happened to go to Mr. Hunter. I cannot tell exactly how long that was before the 60 days expired. I know it was a short time.

''It was in October and it was November the lease was supposed to be up. It was only a matter of a week or two it would be up, and I told him that we

only had a short time  *  *  *  before the lease would be up. I was awfully anxious to get a well on the place.  *  *  *  I never had a talk with either of these people about putting this lease on record. It wasn't supposed to go on record. That was understood or I wouldn't have signed the lease.''

One plaintiff consented to taking the lease from escrow and the other plaintiff, when made aware of such taking, was perfectly willing to enter into another lease and supplant the old one, and also knew the $100 had been given to her husband and, with such knowledge, used the money.

The conversion was not in recording the lease. The wrong was in not entering into a new lease which plaintiffs were willing to give after the lease, now claimed to have been converted, was taken from escrow. This subject was not passed on in the equity case brought to cancel the lease; nor did that record enlighten us on this subject. Even if it be held that defendants converted the lease it must be said that from then on all their acts and the consequences to plaintiffs were wrongs for which an action of tort, perhaps, might be brought but for which conversion is not the remedy.

Had defendants removed any of the oil or gas then trover for such would lie; but they removed nothing.

It is elementary that one, otherwise entitled to bring an action of trover, may afford the wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful. 26 R. C. L. p. 1144.

Trover lies only for the conversion of personal property and not for property while it is a part of the realty. 26 R. C. L. p. 1106.

Oil and gas, until severed from the containing soil, are a part of the realty. Deprivation of opportunity to remove oil and gas from the containing soil does not constitute conversion. Conversion of the lease could not carry the consequences imposed by the judgment herein.

At the time the lease was made plaintiffs' land was "wildcat territory," but after the Prather well came in as a producer there was considerable activity in acquiring leases, and then there was a speculative value.

The testimony relative to lessened value of plaintiffs' lands, by reason of nearby wells and possible effect of drainage of the oil was highly speculative, as one witness for plaintiff testified. There may be a flowing well at one point, and 100 feet away there might be a dry hole put down, and characterized this as the "oilman's luck," and made the trite observation that he had had considerable experience himself. Another witness said that the matter of a lease was a gamble anyhow, but from hearsay about other properties and leases he thought a lease of plaintiffs' property would have been worth about $1,500 in 1928. Another witness thought the lease, at about the time it was given, was worth about $1,000 per acre, and this is probably the estimate accepted by the jury.

Plaintiffs' case is not planted for an equitable conversion. If it were, then the court of equity would have had sole jurisdiction and, instead of canceling the lease, defendants would have been asked to respond for taking it without right and the damages would have been measured by the loss occasioned by nonperformance of the lease. Instead, plaintiffs have been awarded damages, measured by

what could have been obtained had there been no lease.

Defendants, by answer, pleaded:

"The good faith of the defendants in the premises was adjudicated by the Supreme Court of the State of Michigan in the case of *Eadus* v. *Hunter,* 249 Mich. 190, where the court on page 192 specifically held:

" 'There was no indication of fraud or overreaching on the part of defendants.'

"This was an adjudication by said court upon the question of fraud upon which plaintiffs' right to recover here depends, binding on the parties to this suit, and conclusive of their rights herein, and sufficient to bar plaintiffs' right to recover."

In reply to this plaintiffs pleaded:

"As to paragraph two, plaintiffs admit that said opinion of the Supreme Court contains the statement quoted, but deny that said statement is conclusive upon the question of the good faith of the defendants.

"In support of this denial, plaintiffs will show that said statement was not necessary to the decision of said cause but was merely *obiter dictum* and not *res judicata* on that issue.

"As to paragraph three, plaintiffs deny that there has been an adjudication by the Supreme Court in any respect conclusive upon the right of plaintiffs relative to the fraud of the defendants, and deny that said decision is sufficient to bar plaintiffs' rights to recover."

Defendants wanted an extension of the lease and paid $100 for that purpose. Both plaintiffs were willing to give the extension. The proper extension was not executed. Plaintiffs should have returned the $100.

There was no fraud. At the most, there was an honest assertion of rights, supported by advice of an attorney, but unjustified under holding by this court.

The judgment is reversed and a new trial granted, with costs to defendants.

NELSON SHARPE, C. J., and BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with WIEST, J.

FEAD, J. *(dissenting)*. Plaintiffs had verdict of a jury and judgment in action for damages for conversion of an oil and gas lease. Defendants contend verdict for them should have been directed on the ground of ratification or estoppel and also that the court erred in refusing their requests to charge.

August 13, 1928, plaintiffs owned five acres of land by the entireties and another three and a half acres were owned by Eadus and occupied by plaintiffs as their homestead. They executed an oil and gas lease to defendant Hunter, who took and held for himself, Gage, and one Moyer. The latter negotiated the lease but was not served herein.

The lease provided that a well be commenced by November 13, 1928, or the lessee pay $45 rental to cover extension of one year for commencing the well. Moyer and Eadus deposited the lease in a bank in escrow, upon the condition that the lessee should commence drilling within 60 days after a neighborhood well should produce oil or gas in paying quantities. The other well produced on September 14th.

October 20th defendants paid Eadus $100 and he executed an instrument extending the drilling time on the lease held in escrow. The period of extension was not stated in the instrument but, con-

cededly, it was 30 days. On November 3d Eadus and Moyer withdrew the lease from escrow. Moyer, on advice of his attorney, had it recorded the same day. Mrs. Eadus claims she did not know of the withdrawal of the lease for a few days and, on learning of it, protested to Hunter. Eadus claims he asked both Moyer and Hunter to return the lease but could not get it. November 13th defendants tendered the $45 rental to plaintiffs but it was refused. November 21st plaintiffs commenced suit in chancery to have the lease declared void and the record cleared, and it was so decreed. *Eadus* v. *Hunter,* 249 Mich. 190.

The conversion arose from breach of the arrangement between Eadus and Moyer when they withdrew the lease from escrow. Eadus claimed that the lease was withdrawn in order that a new one should be executed in its place to provide for a 30-day extension for drillng and the new lease was to be deposited in escrow upon the same conditions as the old one. Defendants claimed the lease was delivered to Moyer without conditions. The issue of fact so made was submitted to the jury, which found for plaintiffs. No new lease was executed and defendants did not commence drilling on the Eadus land within any period of the extension.

Defendants contend Mrs. Eadus ratified the 30-day extension of time for drilling because she used for her daughter's education the $100 received by Eadus for the extension and did not return the money on discovery of its source. Granting the claim, it would not work a ratification of defendants' breach of the arrangement under which the lease was withdrawn from escrow and sanction defendants' recording the lease and claiming under it.

Defendants say they could not be guilty of conversion because the lease was in force and was their property. Aside from the fact that the chancery proceedings settled the issue of delivery of the lease, the verdict in the instant case determined that there was no delivery to convey to defendants.

Defendants further contend that the action is for slander of title, to which good faith and want of malice is a defense, and the court erred in refusing their requests to charge to that effect. It is conceivable that the action of slander might have been brought (*Kingkade* v. *Plummer,* 111 Okla. 197 [239 Pac. 628]), but plaintiffs declared on conversion of the lease, so elected at the trial, and the court charged on that theory.

Actions of trover for conversion of leases or muniments of title long have been known to the law. 65 C. J. p. 21, 50 A. L. R. 1171, note. Not in point but of special interest in connection with the facts at bar are: *Daggett* v. *Davis,* 53 Mich. 35 (51 Am. Rep. 91); *Parry* v. *Frame,* 2 Bos. & Pul. 451 (126 Eng. Repr. 1379); *Robert* v. *Wyatt,* 2 Taunt. 268 (127 Eng. Repr. 1080); *Hooper* v. *Ramsbottom,* 6 Taunt. 12 (128 Eng. Repr. 936); *Cronkhite* v. *Chaplin* (C. C. A.), 282 Fed. 579. Good faith and want of malice is not a defense to an action of conversion.

I think Mr. Justice Wiest overlooks three facts, (a) that excessiveness of damages is not raised in the statement of questions involved nor argued in the briefs; (b) the conversion consisted of taking and using the lease in a manner contrary to the agreement of the parties (65 C. J. p. 36); and (c) all damages to plaintiffs caused by the misuse are re-

ferable to the conversion (65 C. J. p. 130), and do not constitute an independent tort.

Judgment should be affirmed, with costs.

NORTH, J. *(dissenting)*. In reviewing a law case tried by a jury this court should render decision upon the question or questions presented and briefed by appellant. In the instant case appellants' brief presents two questions for review. One of them relates to refusal of the trial judge to give requests to charge pertaining to recovery by plaintiffs on the theory of slander to title. The case was not submitted to the jury upon this theory, hence on that phase of the appeal there is nothing before us for review.

The only remaining question presented and briefed by appellants is:

"Ought not the court to have directed verdict for defendants on the ground of ratification or estoppel of plaintiffs?"

The ratification or estoppel asserted is that the $100 paid by defendants to plaintiffs was retained by the latter. Plaintiffs' testimony was to the effect that this $100 was paid for an extension of an oil lease, that incident to such extension defendants were to have a new lease prepared and presented to plaintiffs for execution. Admittedly defendants did not prepare or present the new lease for plaintiffs' signatures. Hence plaintiffs did not breach their undertaking, and therefore were not obligated to return the $100. If not obligated to return this money, then retaining it did not result in ratification or estoppel. Defendants asserted a conflicting

claim. An issue of fact was thus presented. The jury found for plaintiffs.

On this record judgment should be affirmed.

POTTER, J. *(dissenting)*. In defendants' claim of appeal these questions are raised:

That the trial court erred in its instructions to the jury on the measure of damages; the evidence in support of the claimed deterioration of the leasehold was remote, speculative and uncertain; the verdict was excessive; as to defendants Hunter and Gage the verdict was contrary to the great weight of the evidence and there was no testimony to warrant a judgment against such defendants.

The declaration alleges plaintiffs' ownership of the premises and defendants' conversion of a lease and leasehold interest in the premises by which plaintiffs were deprived of the prospective profits which they might have made but for defendants' wrongful acts. An action for the conversion of the lease will lie. An action will lie for wrongful interference with a leasehold interest.

A lease is a specific chattel, a paper writing subject to conversion, and a suit will lie for its conversion. It is personal property, and damages for its conversion are measured by what is adequate compensation for its loss. Defendants are liable if they converted the lease for the injuries suffered by reason of its conversion.

A leasehold interest in real estate is real property. It is not personal property. An action will not lie for its conversion. A leasehold interest is not personal property subject to conversion. It is an interest in real estate and conversion is not an appropriate remedy for its injury. Damages for the conversion of a leasehold interest in real estate,

in its inherent nature not subject to conversion, may not be recovered in a suit for conversion.

No one would think another could be convicted of the larceny of a leasehold interest in real estate. It is not a subject for an action of replevin, and an action of trover at common law would not lie for its conversion though ejectment might lie for its recovery if one were unreasonably excluded from its enjoyment.

The court erred in its instructions to the jury on the measure of damages. The verdict was excessive in amount. There was no evidence competent under the declaration to support a verdict for damages for the conversion of a leasehold interest in real estate,—the leasehold interest which from its nature was not capable of conversion, and such verdict was therefore contrary to the great weight of the evidence.

Judgment should be reversed and a new trial granted unless plaintiffs elect to reduce the judgment to $2,000 and interest. If they so elect, judgment should be affirmed at that amount, with costs.