ANTRIM COUNTY TREASURER v DEPARTMENT OF TREASURY

Docket No. 248963. Submitted August 3, 2004, at Grand Rapids. Decided August 31, 2004, at 9:00 A.M. Leave to appeal sought.

Shirley Comben, Antrim County Treasurer, brought an action seeking declaratory relief in the Antrim Circuit Court against the state of Michigan, the Michigan Department of Treasury, and numerous subsurface property rights owners, including Pure Resources, L.P. (Pure), Dominion Reserved, Inc. (Dominion), and Wolverine Gas and Oil Company, Inc. (Wolverine). The action related to the status of existing oil and gas property rights severed from surface property rights that had been foreclosed for nonpayment of property taxes. Pure, Dominion, and Wolverine argued that they had not been given proper notice under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, of the foreclosure action and that the severance tax, MCL 205.301 *et seq.*, obviated foreclosure for nonpayment of property taxes pursuant to the GPTA on their property rights in oil and gas leases. The court, Philip E. Rodgers, Jr., J., determined that, because the Legislature had enacted a separate and distinct scheme for the taxation of oil and gas and had declared oil and gas exempt from other taxes under the severance tax act, MCL 205.315, the GPTA does not extinguish severed subsurface oil and gas interests.

The Court of Appeals *held*:

1. The severance tax exempts interests in subsurface oil and gas rights from the ad valorem property tax under the GPTA. Tax foreclosures of parcels with wholly severed oil and gas interests do not include the oil and gas interests. Because specific statutory provisions control over general ones, the specific provision of the severance tax act exempting oil and gas interests from other taxes controls over the general provisions of the GPTA. Further, the specific methods of protecting mineral rights delineated in the dormant minerals act, MCL 554.291 *et seq.*, control over the general authority within GPTA for foreclosure of properties on which taxes are unpaid.

2. Although unsevered oil and gas in the soil are part of the real estate, if subsurface oil and gas interests are severed, they remain unaffected by a tax foreclosure of the attendant surface

estate by a foreclosing governmental unit. For that reason, owners of oil and gas subsurface property rights that have been severed from the surface rights require no notice of the foreclosure proceedings relating to the surface property rights.

Affirmed.

REAL PROPERTY — TAX FORFEITURE — SEVERED SUBSURFACE INTERESTS — OIL AND GAS.

Wholly severed subsurface oil and gas interests are unaffected by a tax foreclosure of the attendant surface estate by a foreclosing governmental unit because the severance tax act exempts oil and gas interests from other taxes and because the specific methods of protecting mineral rights delineated in the dormant minerals act control over the general authority within the General Property Tax Act for foreclose of properties on which taxes are unpaid (MCL 205.301 *et seq.*, 211.1 *et seq.*, 554.291 *et seq.*).

*Charles H. Koop*, Prosecuting Attorney, for Antrim County.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Kevin T. Smith*, Assistant Attorney General, for the state of Michigan and the Department of Treasury.

*Lynch, Gallagher, Lynch, Martineau & Hackett, P.L.L.C.* (by *John J. Lynch* and *Mary Ann J. O'Neill*) and *Worman, Dixon & Manis, P.L.C.* (by *Paula K. Manis*), for Pure Resources, L.P.

*Mika Meyers Beckett & Jones PLC* (by *Mark A. Kehoe*) for Dominion Reserves, Inc.; and Wolverine Gas & Oil Company, Inc.

*Robert A.W. Strong* for the Robert A.W. Strong Revocable Trust.

Before: WHITBECK, C.J., and OWENS and SCHUETTE, JJ.

PER CURIAM. Defendants-appellants, the state of Michigan and the Department of Treasury, appeal as of

right the order granting summary disposition for the defendants-appellees Pure Resources, L.P.; Dominion Reserves, Inc.; and Wolverine Gas & Oil Company, Inc. We affirm.

## I. FACTS

This case stems from the 1999 revisions to the General Property Tax Act (GPTA), 1893 PA 206 as amended, MCL 211.1, *et seq.* The revisions changed the statutory scheme for the collection of delinquent real property taxes from a tax sale scheme to one of forfeiture and foreclosure. Under the GPTA, a county board of commissioners, with the concurrence of the county treasurer, could elect to foreclose on property with delinquent real property taxes and have the property forfeited to the county treasurer. MCL 211.78a(3).

On April 3, 2001, plaintiff Sherry Comben, Antrim County Treasurer, filed an action for foreclosure upon those parcels that had been forfeited and for which the taxes remained unpaid for the tax years 1997 and 1999. Antrim County became the foreclosing governmental unit (FGU). On March 1, 2002, the circuit court entered an order of foreclosure regarding 134 parcels for which taxes had remained unpaid. However, plaintiff was concerned about the effect this amended law would have on severed oil and gas rights on the properties in question. Thus, on June 24, 2002, plaintiff brought a declaratory judgment action seeking a ruling on issues related to the foreclosure process.

## A. PARTIES

Plaintiff is Antrim County Treasurer Comben. Defendant state of Michigan is an FGU for the approxi-

mately fifty-seven counties that elected under MCL 211.78(3) to have the state handle the foreclosure of properties for unpaid taxes. Defendant Department of Treasury is the state agency responsible for foreclosure action on behalf of those approximately fifty-seven counties.

The remaining defendants were identified as having significant interests in oil and gas underlying tax-foreclosed parcels in Antrim County. Defendant-appellee Pure Resources L.P. (Pure Resources), and defendants-appellees Dominion Reserves, Inc. (Dominion), and Wolverine Gas & Oil, Inc. (Wolverine), submitted briefs in support of the trial court's decision. The multitude of private individuals, and certain of their derivative interests, named as defendants are either not participating in this appeal, or are tacitly joining in the advocacy of Dominion and Wolverine.

### B. CIRCUIT COURT DECISION

Defendant Pure Resources filed a motion for summary disposition, pursuant to MCR 2.116(C)(8) and (10), asking the circuit court to find that 1999 PA 123 fails to provide the owners of an interest in the subsurface estate with due process, i.e., proper notice and an opportunity to be heard, to contest the forfeiture proceedings. Pure Resources alternatively asserted that oil and gas interests are exempt from ad valorem property taxes because the severance tax on severed minerals is "in lieu of any other taxes."

Defendants Dominion and Wolverine filed a motion for summary disposition, pursuant to MCR 2.116(C)(8), seeking a ruling that the GPTA does not apply to leases or the rights to develop and operate any lands of this state for oil and gas, the values created thereby, and the property rights attached to or inherent therein because

they are exempt by virtue of the severance tax act, MCL 205.301 *et seq.* These defendants alternatively sought a ruling that the GPTA, as amended, if applied to oil and gas interests, violates the due process clauses of the Michigan and United States constitutions.

With the trial court's decision to grant summary disposition, it concluded that because "the Legislature has enacted a separate and distinct scheme for the taxation of oil and gas and has declared oil and gas exempt from all other taxes, . . . the GPTA . . . does not extinguish severed subsurface oil and gas interests." This finding technically rendered the court's analysis of the constitutional problems that would have arisen had the court found otherwise obiter dictum, although, in fact, the court found as it did on the main issue, in part, to avoid having to conclude that the pertinent legislation was unconstitutional. This Court must now consider a specific question of law: whether severed[1] oil and gas interests are merged with their surface estates when the latter are taken by an FGU because of the failure of the surface owner to pay taxes.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition as a question of law. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). Issues of statutory interpretation likewise warrant review de novo as questions of law. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995).

---

[1] It seems well to reiterate the parties' and trial court's caution to bear in mind that "severance" refers at times to divided, or severed, ownership interests, and at other times to gas or oil removed, or severed, from the soil.

III. ANALYSIS

The trial court correctly held that the severance tax wholly exempts interests in oil and gas rights from the ad valorem tax[2] and that tax foreclosures of parcels with severed oil and gas interests do not include those interests.

Defendants-appellants focus on whether the severance tax wholly displaces any ad valorem taxes on oil and gas, whether still in the soil or extracted for the market. Implicit in this inquiry is the question whether the trial court's conclusion that the severance tax is the only tax applicable to possession or harvesting of subsurface oil and gas. The implication of such a finding is that there is no obligation to pay ad valorem taxes on those interests and that this necessarily shields severed interests from forfeiture along with the attendant surface estate when the latter is foreclosed by an FGU for want of payment of ad valorem taxes on the surface estate.

Defendants-appellants point to legal history indicating that the state routinely reserved oil and gas rights when alienating parcels it had acquired for nonpayment of ad valorem taxes, thus showing that the state might acquire oil and gas rights through tax foreclosure of a parcel and, thereafter, treat the surface estate as separate from the subsurface estate. Defendants-appellees concede that oil and gas rights that are not severed from the surface estate vest in the state along with the surface estate upon tax foreclosure. Indeed, our Supreme Court has stated "[o]il and gas, unsevered,[3] are

---

[2] An "ad valorem tax" is a tax on the value of property, as opposed to a "specific tax," which is a fixed sum imposed "on each article of a class without regard to its value." Black's Law Dictionary (6th ed). See Const 1963, art 9, § 5.

[3] That case involved a lease for development of subsurface resources, not an outright alienation of ownership rights in the subsurface. The

part of the real estate." *Eadus v Hunter*, 249 Mich 190, 196; 228 NW 782 (1930), citing 40 CJ 904. The Court shortly afterward stated that, where ownership of a fee is absolute, "[t]he oil, gas, and minerals in the soil are part of the real estate." *Attorney General v Pere Marquette R Co*, 263 Mich 431, 433; 248 NW 860 (1933).

This rule avoids the peculiar result where a tax-delinquent owner of an unsevered parcel would retain subsurface rights while forfeiting his or her surface estate, thus causing tax foreclosure automatically to sever previously undivided interests and leaving the delinquent owner of the whole fee a potentially lucrative interest therein. The question before this Court only concerns the implications for a severed subsurface estate whose attendant surface estate has been tax foreclosed by an FGU.

Section 78k(5)(e) of the GPTA, MCL 211.78k(5)(e), directs a court finalizing the tax foreclosure of a parcel to specify that "all existing recorded and unrecorded interests in that property are extinguished, except a visible or recorded easement or right-of-way, private deed restrictions . . . or other governmental interests, . . . if all forfeited delinquent taxes, interest, penalties, and fees are not paid within 21 days after entry of the judgment." The words "all existing recorded and unrecorded interests in that property" seem to embrace every conceivable property interest. "[T]he meaning of the Legislature is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense." *Gross v Gen Motors Corp*, 448 Mich 147, 160; 528 NW2d 707 (1995). The setting

---

Court may have used the term "unsevered," then, in the sense of "not removed from the ground." However, it is not apparent that Court felt any need to make that distinction in this context.

forth of a few specific exceptions that do not include severed gas or oil rights implies that the latter are not exempted. "[T]he express mention of one thing in a statute implies the exclusion of other similar things." *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997); *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 247; 590 NW2d 586 (1998).

Statutes that have a common purpose should be read to harmonize with each other in furtherance of that purpose. *Jennings v Southwood*, 446 Mich 125, 136-137; 521 NW2d 230 (1994). Also bearing on the question of tax obligations is the severance tax act, MCL 205.301 *et seq.* Section 3(1) of that act, MCL 205.303(1), specifies, within limitations, rates of taxation upon "the total production of" gas or oil. Section 15 provides as follows:

> *The severance tax* herein provided for *shall be in lieu of all other taxes*, state or local, upon the oil or gas, the property rights attached thereto or inherent therein, or the values created thereby; upon all leases or the rights to develop and operate any lands of this state for oil or gas, the values created thereby and the property rights attached to or inherent therein: Provided, however, Nothing herein contained shall in anywise exempt the . . . equipment used in the development or operation of said leases, or used to transmit or transport the said oil or gas: And provided further, That nothing herein contained shall in anywise relieve any corporation or association from the payment of any franchise or privilege taxes required by the provisions of the state corporation laws. [MCL 205.315 (emphasis added).]

Defendants-appellants argue that § 15 applies only to oil and gas severed from the ground in the sense of being removed from the ground, not severed interests in undeveloped oil and gas. However, the trial court

convincingly acknowledged that oil and gas are fluid and mobile in their natural habitat, as opposed to solid minerals that remain fixed in their underground positions unless and until extracted. Accordingly, "[t]he only ownership that one can have in unproduced oil and gas is the right . . . to reduce the same to possession and thereby acquire title thereto. This fundamental precept of oil and gas law, commonly known as the 'law of capture,' is based upon the fugitive nature of oil and gas . . . ." *Michigan Consolidated Gas Co v Muzeck*, 4 Mich App 502, 507; 145 NW2d 266 (1966). Section 15 of the severance tax act singles out oil and gas from other valuable underground natural resources in obvious recognition of the uncertainties inherent in assessing how much oil or gas may exist under a given parcel and because quantities pass under a given parcel only transiently while all remain subject to capture by others from adjacent parcels. For these reasons, the broad language in § 15 describing the exclusive nature of the severance tax, as applied to "property rights . . . or the values created thereby," should be taken to restrict taxation of all interests in oil and gas to the severance tax, with no distinction between reserves, known and unknown, or developed and undeveloped, or between divided and undivided estate interests.

The interplay between the severance tax and other taxes is instructive. The severance tax wholly shields royalties from production of oil and gas from the personal income tax. See *Bauer v Dep't of Treasury*, 203 Mich App 97, 101; 512 NW2d 42 (1993). This is also true for the single business tax. *Cowen v Dep't of Treasury*, 204 Mich App 428, 431-434; 516 NW2d 511 (1994). It is only logical that the broad language in § 15 similarly be read to cover the ad valorem property tax as well.

The broad and unambiguous language in MCL 205.315 compels the conclusion that the Legislature imposed a tax on oil and gas, as they are extracted and, thus, transformed from speculative interests into marketable chattels, as the exclusive vehicle through which the state may tax those natural resources.

Defendants-appellees protest that if § 78k(5)(e) of the GPTA is taken to extinguish severed interests in oil and gas, persons holding such interests stand to lose property of sometimes great value because of the failure of a third party to pay taxes for which that interest holder had no obligation. This issue concerned the trial court as well. However, the emphasis that the trial court and the parties afford to special statutory provisions governing how oil and gas are to be taxed seems to presume something that is not necessarily so: that one with a partial ownership interest in a parcel of land may never lose that interest if the parcel is tax foreclosed if that fractional interest itself carried no tax obligations. Such other interests, not among the exceptions in MCL 211.78k(5)(e), that might be at risk because of tax foreclosure, whose owners would have no direct tax obligations in the matter, include residential leaseholds, rights of reversion, expectancies under testamentary or trust instruments, or contracts for purchase. We find the special treatment of oil and gas in MCL 205.315 lends some credence to the supposition that MCL 211.78k(5)(e) does not extinguish severed interests in oil and gas, but does not compel that conclusion.

The trial court also cited the dormant minerals act, MCL 554.291 *et seq.* This legislation provides that severed oil and gas interests are forfeited to the surface owner unless the owners of such interests take at least one of certain specified actions every twenty years to indicate continuing designs on developing those inter-

ests. MCL 554.291 and 554.292. The primary purpose of this legislation is "not to vest title to the severed interests in the surface owner but rather . . . to facilitate development of those subsurface properties by reducing the problems presented by fragmented and unknown ownership." *Van Slooten v Larsen*, 410 Mich 21, 44; 299 NW2d 704 (1980).

In this case, the trial court opined that "[i]f the GPTA . . . is interpreted to extinguish severed oil and gas rights, it would conflict with the Dormant Minerals Act because the owner of the severed oil and gas interest, who fully complied with the requirements of the Dormant Mineral[s] Act, could nonetheless lose his interest if the surface owner failed to pay taxes." The court's reasoning is sound.

Where a specific statutory provision differs from a related general one, the specific one controls. *Gebhardt v O'Rourke*, 444 Mich 535, 542-543; 510 NW2d 900 (1994). This holds true even where the general provision was enacted after the specific one. *Bauer, supra* at 100. When a surface owner forfeits his or her land to an FGU for failure to pay taxes, the FGU becomes the surface owner. If the general provision for extinguishing "all existing recorded and unrecorded interests in that property" of § 78k(5)(e) of the GPTA were meant to override the specific avenues for preserving severed oil and gas interests set forth in §§ 1 and 2 of the dormant minerals act, the Legislature would have included a statement to that effect within the GPTA or revised accordingly the dormant minerals act.

The distinction implicit in the pertinent statutes is that the surface owner's failure to pay taxes subjects that surface owner's interest to confiscation by an FGU and, along with that, all other interests that are in some way *derivative* of that of the surface owner. Persons

hoping to move into a residential unit pursuant to a lease, a reversionary right,.the terms of a will or trust, or a contract for purchase are all hoping to acquire something that the surface owner is empowered to alienate. That is not so with respect to persons exercising their rights pursuant to wholly severed subsurface interests, including those taking specific precautions against forfeiture to the surface owner under MCL 554.292. Persons dealing with the surface owner may reasonably be charged with understanding that their rights depend on those of that surface owner; this is not so with respect to persons whose severed oil and gas interests exist apart from those of the surface owner.

Given our determination that an FGU does not acquire severed interests in subsurface oil and gas with the tax foreclosure of a surface estate, owners of such subsurface property rights require no notice of the foreclosure proceedings, and no constitutional issue arises.

Affirmed.